ANTHONY N. FRAULO ET AL. *v.* MARIO GABELLI

MARIO GABELLI *v.* ANTHONY N. FRAULO ET AL.
(12961)

FOTI, HEIMAN and SCHALLER, Js.

---

[2] Our immediate concern here is the validity of the lis pendens and not the validity of the underlying mechanic's lien.

Argued February 14—decision released May 2, 1995

*David P. Burke,* for the appellants (plaintiffs in the first case, defendants in the second case).

*Richard L. Albrecht,* for the appellees (defendant in the first case, plaintiff in the second case).

FOTI, J. This case involves a commercial arbitration proceeding. Anthony N. Fraulo and CFC Greenwich Realty Corporation (CFC) appeal from the trial court's judgment denying their application to vacate an arbitration award brought pursuant to General Statutes § 52-418 and concomitantly granting the application of Mario Gabelli for an order confirming the award. On appeal, Fraulo and CFC claim that the trial court improperly determined that (1) the arbitrator did not exceed his powers when rendering the interim orders

and the final award, and (2) the arbitrator was not guilty of misconduct when he refused to hear evidence allegedly pertinent to the controversy. We affirm the judgment of the trial court.

The relevant facts are as follows. In 1985, Anthony Fraulo, Vincent Colangelo and Capital Impact Corporation formed CFC Greenwich Realty Corporation.[1] In 1987, CFC constructed a "spec" house (property) in Greenwich. On August 30, 1988, CFC and Gabelli entered into a joint venture agreement. Under the terms of this agreement, Gabelli agreed to assist CFC by providing funds for servicing the construction debt and for other expenses related to carrying the property for up to two years. In return, Gabelli was to be reimbursed for his financial contributions out of the net proceeds from the sale of the property. Gabelli was also to receive a share of any profits from the sale. On September 19, 1988, Fraulo and Colangelo executed a document titled "Guaranty." Under the terms of this document, Fraulo and Colangelo "jointly and severally . . . guarantee[d] the punctual payment of the sums due Mario Gabelli under the Joint Venture Agreement . . . ." From September, 1988, through June, 1990, Gabelli made payments to Fraulo totaling $326,000.

As of January, 1990, the property had not been sold. At that time, Gabelli claimed to have discovered certain misrepresentations and nondisclosures by Fraulo and Colangelo in conjunction with the venture. The joint venture agreement expressly provided for the arbitration of certain disputes,[2] and, on December 21,

---

[1] Colangelo is subject to the arbitration award being challenged in this appeal but he is not a party to this appeal. Capital Impact Corporation was severed from the arbitration proceeding after being placed in receivership proceedings in the United States District Court for the District of Connecticut. No judgment was entered as to Capital Impact Corporation.

[2] Section 10 of the joint venture agreement, entitled "Arbitration," provides that "[a]ny matter in dispute, and which is not provided for in this agreement, shall be submitted to arbitration. . . ."

1990, Gabelli filed a demand for arbitration with the American Arbitration Association. Gabelli claimed that Fraulo, who is an attorney, breached his fiduciary duty to Gabelli in relation to the joint venture agreement. In his initial demand for arbitration, Gabelli claimed that "the agreement should be rescinded because of a breach of fiduciary duty, misrepresentations, and nondisclosure of material facts." The relief sought was a return of the funds advanced by Gabelli to the venture plus interest, attorney's fees and rescission of the agreement.

Shortly after the commencement of arbitration proceedings, Fraulo, Colangelo and CFC (respondents) brought an action in the Superior Court seeking to enjoin Gabelli from continuing with arbitration claiming that the issues of breach of the agreement and rescission were issues to be resolved by the court and not by arbitration. By memorandum of decision dated May 2, 1991, the trial court denied the application for an injunction. The court held that under the broad language of the agreement's arbitration provision, the question of what was subject to arbitration was for the arbitrator to decide. The respondents took no further action regarding these proceedings and the question of arbitrability.

Thereafter, the respondents filed a counterclaim in the arbitration proceeding seeking payment of sums owed by Gabelli under the agreement and "[r]escission of the personal guaranty of . . . Fraulo and . . . Colangelo . . . which guaranty was solicited by [c]laimant for the promises in the agreement." In February, 1992, Gabelli learned that Fraulo was in the process of negotiating a sale of the property. Gabelli requested information regarding these negotiations but Fraulo refused to disclose the information. On February 7, 1992, Gabelli filed a motion for interim measures with the arbitrator, seeking orders that would require

the respondents to provide Gabelli with a copy of any proposed sales contract and orders relating to the disposition of any sale proceeds. On February 14, 1992, the arbitrator conducted a telephone conference with counsel for all parties and ordered that a copy of the unsigned sales contract be provided to Gabelli. On February 18, 1992, a sales contract was executed without an unsigned copy being given to Gabelli. On February 21, 1992, the arbitrator issued the first of four interim orders. In this order, the arbitrator directed that a copy of the contract of sale be provided to all the parties within three days, that an appraisal of the property be conducted, and, pursuant to rule 34 of the Commercial Arbitration Rules, that there be no further proceedings toward the sale.[3] The arbitrator stated that "[t]his order arises out of the imminent sale of the . . . property . . . and questions raised by . . . claimant as to the value of such property and, if the property is sold, the safeguarding of the sale proceeds pending a final award in this proceeding." After this order was issued, Gabelli filed a caveat on the Greenwich land records giving notice of the order.

On April 10, 1992, the respondents sought a modification of the arbitrator's ruling precluding the sale of the property. The arbitrator issued his second interim order, directing that the property could be sold with the net proceeds being promptly remitted to Gabelli.[4]

[3] Rule 34 of the Commercial Arbitration Rules provides: "INTERIM MEASURES: The arbitrator may issue such orders for interim relief as may be deemed necessary to safeguard the property that is the subject matter of the arbitration without prejudice to the rights of the parties or to the final determination of the dispute."

[4] Specifically, the arbitrator ordered that "[t]he . . . property may be sold . . . . The net proceeds of the sale . . . shall be remitted promptly to . . . Gabelli. The term 'net proceeds' means . . . the sale price of $1,395,000 less the outstanding balance of loans secured by the property and required to be paid in order to convey clear title to the property . . . . The foregoing supercedes the arrangement set forth in paragraph 5 of my letter of February 21, 1992."

Following this order, Gabelli caused an amended caveat to be filed on the Greenwich land records.

On April 16, 1992, Gabelli filed an amendment to his original demand for arbitration. In his amended claim for relief, Gabelli continued to seek rescission of the agreement, return of the funds advanced by him to the venture and attorney's fees. He also sought, however, in the alternative, damages for breach of contract under the joint venture agreement and an award based on the guaranty. Gabelli's amendment was allowed on May 16, 1992.

On June 30, 1992, the property was sold and the respondents remitted to Gabelli a check in the amount of $3432.86 as his share of the net proceeds from the sale. After reviewing the closing statement from the sale, the arbitrator, on July 30, 1992, issued a third interim order. He found that the allocation of proceeds was inconsistent with his ruling of April 10, 1992, and that there was a balance due Gabelli in the amount of $106,397.51. The respondents filed a motion for reconsideration with the arbitrator. In response, the arbitrator issued his fourth interim order on September 29, 1992, wherein he amended his finding to provide that the balance due Gabelli was $140,279.11.

In his final award issued after the conclusion of the evidence, the arbitrator awarded Gabelli damages in the amount of $275,084.15.[5] All of Gabelli's other demands for relief, including rescission of the joint venture agreement, were denied. The counterclaims by the respondents were also denied.

[5] This amount included the $140,279.11 previously awarded Gabelli in the third and fourth interim orders. It also included $25,000 that had been escrowed with a title insurance company in order to address the caveats placed on the land records, and $109,805.04 with interest from September 15, 1988.

On March 17, 1993, Gabelli filed an application, pursuant to General Statutes § 52-417, to confirm the arbitration award. The respondents filed an application to vacate the award. By memorandum of decision dated October 8, 1993, the trial court confirmed the arbitration award and denied the application to vacate.

## I

The respondents first claim that the trial court improperly determined that the arbitrator did not exceed his powers when rendering the interim orders and the final award. Their argument is essentially that the submission to arbitration in this case was restricted, and the arbitrator exceeded his powers by making awards beyond the scope of the submission. We disagree.

On appeal, the respondents deal with each interim order and the final award of the arbitrator separately. They raise essentially the same claim, however, as to each of the awards. They posit that the awards involve a determination of contract damages under the joint venture agreement, and such a determination exceeds the scope of the submission.

The arbitration clause in a contract constitutes the written submission to arbitration. *Vail* v. *American Way Homes, Inc.*, 181 Conn. 449, 451, 435 A.2d 993 (1980). " 'When the parties agree to arbitration and establish the authority of the arbitrator through the terms of their submission, the extent of our judicial review of the award is delineated by the scope of the parties' agreement. . . . When the scope of the submission is unrestricted, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission. . . . Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference

with an efficient and economical system of alternative dispute resolution.' (Citations omitted.)" *International Assn. of Fire Fighters, Local 1339, AFL-CIO* v. *Waterbury*, 35 Conn. App. 775, 778, 647 A.2d 361 (1994), quoting *Garrity* v. *McCaskey*, 223 Conn. 1, 4–5, 612 A.2d 742 (1992).

The respondents claim that the submission in this case was restricted in scope. The trial court found that it was unrestricted.[6] We agree with the trial court that the submission was unrestricted. In determining whether a submission is unrestricted, we look to the authority of the arbitrator. " 'The authority of an arbitrator to adjudicate the controversy is limited only if the agreement contains express language restricting the breadth of issues, reserving explicit rights, or conditioning the award on court review. In the absence of any such qualifications, an agreement is unrestricted.' " *International Assn. of Fire Fighters, Local 1339, AFL-CIO* v. *Waterbury*, supra, 35 Conn. App. 778, quoting *Garrity* v. *McCaskey*, supra, 223 Conn. 5.

In the present case, the agreement does not limit the arbitrator's authority in a manner that would make this a restricted submission. The language of the arbitration clause indicates an intent by the parties to include all disputes that may arise under the agreement and that are not provided for in the agreement. There is no other restrictive language in the clause. Once it is determined that a dispute is subject to arbitration under the clause,[7] the authority of the arbitrator is not limited by any express language. The trial court properly construed the submission as unrestricted.

---

[6] See footnote 2.

[7] As discussed previously, the arbitrability of the dispute in this case was challenged by the respondents in their motion to vacate the arbitration award. The trial court determined that the question of arbitrability was a question for the arbitrator. The respondents have not challenged this ruling on appeal.

If a submission is unrestricted, the award is final and binding, and cannot be reviewed for factual or legal error. *Greater Bridgeport Transit District* v. *Amalgamated Transit Union, Local 1336,* 28 Conn. App. 337, 343, 610 A.2d 1324 (1992). We have recognized three grounds for vacating an award even in the case of an unrestricted submission: (1) the award rules on the constitutionality of a statute; (2) the award violates clear public policy; or (3) the award contravenes one or more of the statutory proscriptions of General Statutes § 52-418. *Garrity* v. *McCaskey,* supra, 223 Conn. 6; *International Assn. of Fire Fighters, Local 1339, AFL-CIO* v. *Waterbury,* supra, 35 Conn. App. 779.

The respondents maintain that the award should be vacated because the arbitrator exceeded his power by making awards that failed to conform to the submission. They argue that at the time the arbitrator issued the first interim order, Gabelli was seeking rescission of the agreement. The order went beyond the scope of the submission in that it dealt with the sale of the property. The respondents argue that the remaining interim orders and the final award, which incorporated the interim orders, went beyond the scope of the submission in that they dealt with contract damages under the joint venture agreement and the guaranty.

General Statutes § 52-418 (a) provides in relevant part that "[u]pon the application of any party to an arbitration, the superior court . . . shall make an order vacating the award if it finds any of the following defects . . . (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." In deciding whether the arbitrator has exceeded his power under § 52-418 (a) (4), we compare the award with the submission to determine if the award and the submission conform. See *New Haven* v. *AFSCME, Council 15, Local 530,* 208 Conn.

411, 415, 544 A.2d 186 (1988); *Hartford* v. *Local 760,* 6 Conn. App. 11, 13, 502 A.2d 429 (1986). "The submission defines the scope of the entire arbitration proceedings by specifically delineating the issues to be decided and no matter outside the submission may be included in the award." *Board of Education* v. *Hartford Federation of School Secretaries,* 26 Conn. App. 351, 353, 600 A.2d 1053 (1992). "The burden of demonstrating the nonconformity of the award to the submission is on the party seeking to vacate the award." Id., 353–54. Every reasonable presumption will be made in order to sustain an award. *Bic Pen Corp.* v. *Local No. 134,* 183 Conn. 579, 584, 440 A.2d 774 (1981).

On the basis of the record provided in this case, we conclude that the trial court acted properly in determining that the respondents did not meet the burden of showing a nonconformity of the award to the submission, which was unrestricted. In his original demand for arbitration, Gabelli raised the issue of whether the joint venture agreement should be rescinded on the bases of a breach of fiduciary duty, misrepresentations and nondisclosure of material facts. Gabelli also sought a return of the funds he contributed to the venture plus attorney's fees. In his amended claim for relief, Gabelli continued to seek the same relief. He also sought in the alternative, however, contract damages under the agreement. In response to Gabelli's claims, the arbitrator awarded damages for breach of contract. He denied Gabelli's request for rescission of the agreement and for attorney's fees. There is no evidence in the record that the arbitrator's interim orders and final award exceeded the scope of the submission. There was an unrestricted submission raising the issues of breach of contract and rescission, issues that were not otherwise provided for under the joint venture agreement. The arbitrator had the power to determine all factual and legal questions with respect to the submission.

718

*O & G/O'Connell Joint Venture* v. *Chase Family Ltd. Partnership No. 3,* 203 Conn. 133, 153, 523 A.2d 1271 (1987).

In their brief, the respondents argue that the arbitrator's third and fourth interim orders were inconsistent with his prior orders. They further argue that the arbitrator, in issuing the interim orders, failed to consider the effect of his prior order enjoining the sale of the property and the effect of the caveats placed by Gabelli on the relevant land records. We are unpersuaded by the respondents' attempt to retry the facts here. " 'If [a] question has been entrusted to the [arbitrator], then the court should not rule upon the merits of the issue and it should not usurp the function conferred upon that tribunal by the parties to the agreement.' " *Bridgeport* v. *Connecticut Police Dept. Employees Local 1159,* 32 Conn. App. 289, 295, 628 A.2d 1336, cert. denied, 227 Conn. 925, 632 A.2d 703 (1993). "Having bargained for the decision of the arbitrator on the question . . . the parties are bound by it, even if it be regarded as unwise or wrong on the merits . . . ." (Citations omitted; internal quotation marks omitted.) Id. As we have frequently stated, we cannot, and do not, retry the facts. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 220, 435 A.2d 24 (1980).

The respondents argue that the arbitrator improperly considered the guaranty that they executed for Gabelli as part of the parties' agreement. They argue that since there was no actual arbitration clause in the guaranty, there was no obligation to arbitrate any liability under its provisions. They claim that the arbitrator ignored the existence of the guaranty as a distinct legal undertaking, and improperly made it an integral part of the joint venture agreement. He then used the

guaranty as a basis for imposing liability on Fraulo and Colangelo individually.[8]

"Arbitrators are only required to render an award in conformity to the submission and an award need contain no more than the actual decision of the arbitrators. An explanation of the means by which they reached the award, unless required by the submission, is needless and superfluous." *Malecki* v. *Burnham*, 181 Conn. 211, 213, 435 A.2d 13 (1980). We agree with the trial court that the arbitrator duly decided that the guaranty constituted an integral part of the agreement. The arbitration proceeding in this case was a creature of contract, and the scope of the arbitration issues was set by the parties in the contract. As part of their counterclaim in the arbitration proceeding, the respondents sought a rescission of the guaranty. The arbitrator determined that both the agreement and the guaranty constituted the basis of the parties' contract. This was a decision on a legal question that the arbitrator was authorized to make. See *Bio-Polymers, Inc.* v. *D'Arrigo*, 23 Conn. App. 107, 111, 579 A.2d 122 (1990).

The parties in this case agreed to submit disputes arising out of the agreement and not covered by the agreement to arbitration. The parties submitted the issue of breach of the agreement, and the submission did not contain limiting or conditional language. The submission, therefore, was unrestricted. Our review of the record indicates that the award conforms to the submission, and the respondents' claim that the arbitrator exceeded his powers is without merit.

---

[8] In his final award, the arbitrator wrote that "[t]he claims of Claimant filed in this proceeding, as amended on April 16, 1992, including all claims arising under, or related to, the Guaranty, dated September 19, 1988, signed by Respondents Fraulo and Colangelo, are deemed arbitrable pursuant to . . . Section 10 ('Arbitration') of the joint venture agreement, dated August 30, 1988 . . . . The Guaranty . . . constitutes an integral part of the Joint Venture Agreement."

## II

Next, the respondents claim that the trial court improperly determined that the arbitrator was not guilty of misconduct when he refused to hear certain evidence. We disagree.

On the first day of the arbitration proceedings, the parties recited a settlement agreement into the record. During the course of testimony before the arbitrator, the respondents attempted to present evidence pertaining to why the settlement had not been concluded. The arbitrator refused to admit this evidence on the basis that it was not relevant. The respondents claim that they also attempted to place in evidence certain information relating to the sale of the property and the distributions from that sale. The arbitrator refused to admit this evidence as well. The respondents argue that the arbitrator, in refusing to admit this evidence, was guilty of misconduct under General Statutes § 52-418 (a) (3).

Section 52-418 (a) provides in relevant part that "[u]pon the application of any party to an arbitration, the superior court . . . shall make an order vacating the award if it finds any of the following defects . . . (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced . . . ."

In *O & G/O'Connell Joint Venture* v. *Chase Family Ltd. Partnership No. 3*, supra, 203 Conn. 133, our Supreme Court discussed the standard to be applied under § 52-418 (a) (3). The court noted that "arbitrators are accorded substantial discretion in determining the admissibility of evidence, particularly in the case of an unrestricted submission, which relieve[s] the

arbitrators of the obligation to follow strict rules of law and evidence in reaching their decision. . . . Indeed, it is within the broad discretion of arbitrators to decide whether additional evidence is required or would merely prolong the proceedings unnecessarily. . . . This relaxation of strict evidentiary rules is both necessary and desirable because arbitration is an informal proceeding designed, in part, to avoid the complexities of litigation." (Citations omitted; internal quotation marks omitted.) Id., 148–49.

In light of these principles, the court "decline[d] to interpret [General Statutes] § 52-418 (a) (3) as mandating that every failure or refusal to receive evidence, even relevant evidence, constitutes misconduct. . . . To establish that an evidentiary ruling . . . rises to the level of misconduct prohibited by § 52-418 (a) (3) requires more than a showing that an arbitrator committed an error of law. . . . Rather, a party challenging an arbitration award on the ground that the arbitrator refused to receive material evidence must prove that, by virtue of an evidentiary ruling, he was in fact deprived of a full and fair hearing before the arbitration panel." (Citations omitted.) Id., 149.

Here, the respondents have neither claimed nor proven that they were denied a full and fair hearing by virtue of the arbitrator's evidentiary rulings. It was within the arbitrator's "substantial" discretion to determine the relevancy of the proffered evidence. On the basis of the record before us, we find that the trial court properly concluded that the arbitrator, rather than the court, was the proper judge of the admissibility of the evidence.

The judgment is affirmed.

In this opinion the other judges concurred.