DONALD L. FRANCO *v.* EAST SHORE DEVELOPMENT, INC., ET AL.

EAST SHORE DEVELOPMENT, INC. *v.* DONALD L. FRANCO
(AC 19208)
(AC 19305)
(AC 19567)

Schaller, Hennessy and Zarella, Js.

Argued April 5—officially released July 25, 2000

*Louis R. Pepe,* with whom were *Jennifer A. Osowiecki,* and, on the brief, *Joseph P. Yamin,* for the appellants (defendants in the first case, plaintiff in the second case).

*Kenneth A. Votre,* with whom, was *Tara J. Galbo,* for the appellee (plaintiff in the first case, defendant in the second case).

*Opinion*

SCHALLER, J. East Shore Development, Inc. (East Shore), a defendant in the first case and the plaintiff in the second case, and Peter Santino and Herman Dostie, defendants in the first case, appeal from the trial court's judgments in favor of Donald L. Franco, the plaintiff in the first case and the defendant in the second case, granting his application to confirm an arbitration award in the first case and denying East Shore's application to vacate the arbitration award in the second case. East Shore, Santino and Dostie claim that the court improperly denied East Shore's application to vacate the arbitration award because the arbitrators, in determining the price of shares that Franco had the option to purchase pursuant to an agreement between the parties, improperly (1) used appraisal values as of a date different from that expressly required by the agreement and (2) failed to use alternate valuation pro-

cedures as expressly provided by the agreement. We affirm the judgments of the trial court.

The following facts and procedural history are relevant to our disposition of this appeal. On September 24, 1992, Santino and Dostie collectively owned 100 percent of the stock in East Shore, the corporate owner of a certificate of need to construct a 120 bed nursing facility in the town of East Haven. On September 24, 1992, Santino and Dostie, individually and on behalf of East Shore, entered into a written option agreement (agreement) with Franco, granting him the option to purchase 80 percent of the shares of the East Shore stock. Section three of the agreement provides in relevant part: "The purchase price for the Optioned Shares shall be calculated at the time Franco exercises the Option to Purchase and shall be determined in accordance with the following formula: The Fair Market Value (as hereinafter defined) x 80% = The purchase price. . . . 'Fair Market Value' shall mean: (i) the fair market value of the Facility and the land upon which it is located . . . as determined by the Appraiser (as hereinafter defined) in accordance with the guidelines for appraisals established by the Department of Housing and Urban Development ('HUD'); less (ii) . . . indebtedness . . . . 'Appraiser' shall mean: (A) an appraiser mutually selected by Franco and the Shareholders; or (B) if Franco and the Shareholders do not agree . . . upon an appraiser . . . then Franco and the Shareholders shall each have the right to designate an appraiser . . . . If such two appraisers . . . shall have made their determinations and if the difference between the amounts so determined shall not exceed ten percent (10%) of the lesser of such amounts, then the appraisal shall be the average of the sum of the amounts so determined. If said difference is greater than ten percent (10%) of the lesser of such amounts, then such two appraisers shall . . . appoint a third (3rd) appraiser

. . . but if such appraisers fail to do so, then either party may request the American Arbitration Association . . . to appoint [an] appraiser and both parties shall be bound by any appointment so made . . . . Any such third appraiser shall be instructed to determine the fair market value of the Premises . . . . All three appraisals shall then be averaged and the result shall be deemed to be the 'Appraisal.'

"Notwithstanding Section 20 of this Agreement, the foregoing provisions for determination of the Fair Market Value of the Premises by appraisal shall be specifically enforceable and any such determination hereunder shall be final and binding upon the parties. . . .

"The foregoing notwithstanding, if the Appraisal is less than $10,250,000, the Corporation shall have the right to either (i) offer to sell to Franco at the Purchase Price as determined herein using the Appraisal . . . or (ii) offer to sell to Franco at the Purchase Price as determined herein using the sum of $10,250,000 as the Appraisal in which instance Franco shall have the right to terminate the Option Agreement . . . ."

Section twenty of the agreement, entitled "Arbitration," provides in relevant part: "Any disagreement between the parties with respect to the interpretation or application of the obligations of the parties (including without limitation, the determination of the Purchase Price) shall be determined by arbitration . . . which arbitration shall be binding on the parties hereto. Such arbitration shall be conducted upon the request of either Franco or the Shareholders, before three (3) arbitrators designated by the American Arbitration Association and in accordance with the rules of such Association. The arbitrators designated and acting under this Agreement shall make their award in strict conformity with such rules."

East Shore constructed the nursing facility and Franco thereafter gave notice of his intent to exercise his option on May 7, 1997. Because the parties could not agree on a single appraiser, they retained separate appraisers to determine the fair market value of the facility and the land. The two appraisers' valuations differed by more than 10 percent, and, thus, pursuant to the agreement, Franco demanded arbitration and sought specific performance. In March, 1998, the arbitrators issued an interim award appointing a third appraiser. The interim award further provided that all appraisers were to conduct appraisals using a valuation date of May 8, 1997, "based upon the real estate value of the land as improved by the existing 120 bed facility, using the HUD guidelines introduced into evidence." The appraisers submitted their appraisals and the arbitrators issued their final award in August, 1998.

The final award determined the purchase price to be $10,250,000, less certain corporate debts to be calculated on the closing date, and set a closing date of August 31, 1998. On August 17, 1998, Franco filed an application with the trial court to confirm the award pursuant to General Statutes § 52-417. On September 4, 1998, East Shore filed an application to vacate the award pursuant to General Statutes § 52-418.[1] In its application, East Shore argued, inter alia, that the arbitrators "exceeded their powers, or so imperfectly exe-

[1] General Statutes § 52-418 (a) provides in relevant part: "Upon the application of any party to an arbitration, the superior court . . . shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

cuted them, such that a mutual, final and definite award upon the subject matter submitted was not made, in that the arbitrators manifestly disregarded the applicable and governing law with respect to the determination of the fair market value of the real property in question." In a memorandum of decision dated December 23, 1998, the trial court granted Franco's application to confirm the arbitration award and denied East Shore's application to vacate the award. These appeals followed and were later consolidated by this court.

I

East Shore, Santino and Dostie claim first that in determining the purchase price, the arbitrators used appraisal values as of a date different from that expressly required by the agreement, that such usage was inconsistent with the arbitrators' own rulings, that such usage was an imperfect execution of their powers and, therefore, that the trial court improperly denied East Shore's application to vacate the award.

East Shore did not make this claim to the trial court. Accordingly, we limit our scope of review to plain error. "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court ... . ." Practice Book § 60-5.

The agreement provides that the purchase price of the shares subject to the option "shall be calculated at the time Franco exercises the Option to Purchase" and that the formula for the purchase price shall be the fair market value multiplied by 80 percent. Fair market value, in turn, shall be determined by subtracting the corporate indebtedness from the fair market value of the facility and the land. The crux of the claim of East Shore, Santino and Dostie is that the arbitrators improperly decided that the fair market value was to be deter-

mined using the appraised values of the facility and the land as of May 8, 1997, and that the corporate indebtedness to be subtracted therefrom was to be calculated on the date of the closing, August 31, 1998. They argue that using different times for each of the respective variables in the agreement's purchase price formula is an internal inconsistency that renders the award fatally flawed.

"To prevail under the plain error doctrine, [a party] must demonstrate that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice. . . . This doctrine is not implicated and review of the claimed error is not undertaken unless the error is so obvious that it affects the fairness and integrity of and public confidence in the proceedings. . . . Furthermore, even if the error is so apparent and review is afforded, the [party] cannot prevail on the basis of an error that lacks constitutional dimension unless [the party] demonstrates that it likely affected the result of the trial." (Internal quotation marks omitted.) *Thomsen* v. *Aqua Massage International, Inc.*, 51 Conn. App. 201, 208–209, 721 A.2d 137 (1998), cert. denied, 248 Conn. 902, 732 A.2d 178 (1999).

East Shore, Santino and Dostie argue that the claimed error is clear, that it requires reversal to avoid manifest injustice and that it likely affected the result of the trial. As to their third assertion, they attempt to show that if the arbitrators had used a common date for the variables, the amount of the purchase price would have been different. Under the plain error doctrine, however, the issue is whether the trial court likely would have granted rather than denied East Shore's application to vacate the award had it been aware of the alleged calculation error. We conclude that the court likely would not have reached a different result.

"The authority of an arbitrator to adjudicate the controversy is limited only if the agreement contains express language restricting the breadth of issues, reserving explicit rights, or conditioning the award on court review. In the absence of any such qualifications, an agreement is unrestricted." (Internal quotation marks omitted.) *South Windsor* v. *South Windsor Police Union Local 1480,* 57 Conn. App. 490, 497, 750 A.2d 465 (2000). It is undisputed in this case that the agreement is unrestricted.

"When the scope of the submission is unrestricted, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission. *Hartford* v. *Board of Mediation & Arbitration,* 211 Conn. 7, 14, 557 A.2d 1236 (1989); *New Haven* v. *AFSCME, Council 15, Local 530,* 208 Conn. 411, 415–16, 544 A.2d 186 (1988). Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution. *Middletown* v. *Police Local, No. 1361,* 187 Conn. 228, 230, 445 A.2d 322 (1982); *State* v. *Connecticut Employees Union Independent,* 184 Conn. 578, 579, 440 A.2d 229 (1981). *Garrity* v. *McCaskey,* 223 Conn. 1, 4–5, 612 A.2d 742 (1992). Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that the construction placed upon the facts or the interpretation of the agreement by the arbitrators was erroneous. Courts will not review the evidence nor, where the submission is unrestricted, will they review the arbitrators' decision of the legal questions involved. . . . *Caldor, Inc.* v. *Thornton,* 191 Conn. 336, 340–41, 464 A.2d 785 (1983), aff'd, 472 U.S. 703, 105 S. Ct. 2914, 86 L. Ed. 2d 557 (1985).

"One of the principal reasons for this deference is that the scope of our review is expressly limited by § 52-418; *Metropolitan District Commission* v. *AFSCME, Council 4, Local 184*, 237 Conn. 114, 118, 676 A.2d 825 (1996); and, sometimes, by the terms of the parties' agreement. *Garrity* v. *McCaskey*, supra, 223 Conn. 5 . . . . [Our Supreme Court] has stated on numerous occasions that arbitration is a creature of contract. See, e.g., *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 185, 530 A.2d 171 (1987); *O & G/O'Connell Joint Venture* v. *Chase Family Ltd. Partnership No. 3*, 203 Conn. 133, 145, 523 A.2d 1271 (1987); *Board of Education* v. *AFSCME, Council 4, Local 287*, 195 Conn. 266, 269, 487 A.2d 553 (1985). Therefore, it is the arbitrator's judgment that was bargained for and contracted for by the parties, and we do not substitute our own judgment merely because our interpretation of the agreement or contract at issue might differ from that of the arbitrator.

"These well established principles governing consensual arbitration are subject to certain exceptions. Even in the case of an unrestricted submission, [our Supreme Court has], however, recognized three grounds for vacating an award: (1) the award rules on the constitutionality of a statute; *Caldor, Inc.* v. *Thornton*, [supra, 191 Conn. 344]; (2) the award violates clear public policy; *Watertown Police Union Local 541* v. *Watertown*, 210 Conn. 333, 339, 555 A.2d 406 (1989); or (3) the award contravenes one or more of the statutory proscriptions of § 52-418. . . . *Garrity* v. *McCaskey*, supra, 223 Conn. 6." (Internal quotation marks omitted.) *Stratford* v. *International Assn. of Firefighters, AFL-CIO, Local 998*, 248 Conn. 108, 115–16, 728 A.2d 1063 (1999). Neither of the first two exceptions apply in the present case. Therefore, we determine only whether the trial court likely would have concluded that the arbitrators' use of two different times in their calculations violates

§ 52-418.[2] The record does not support plain error based on either § 52-418 (a) (1), (2) or (3).

"General Statutes § 52-418 (a) provides in relevant part that '[u]pon the application of any party to an arbitration, the superior court . . . shall make an order vacating the award if it finds any of the following defects . . . (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.' In deciding whether the arbitrator has exceeded his power under § 52-418 (a) (4), we compare the award with the submission to determine if the award and the submission conform. See *New Haven* v. *AFS-CME, Council 15, Local 530*, [supra, 208 Conn. 415]; *Hartford* v. *Local 760*, 6 Conn. App. 11, 13, 502 A.2d 429 (1986). . . . 'The burden of demonstrating the non-conformity of the award to the submission is on the party seeking to vacate the award.' . . . Every reasonable presumption will be made in order to sustain an award." (Citations omitted.) *Fraulo* v. *Gabelli*, 37 Conn. App. 708, 716–17, 657 A.2d 704 (1995), cert. denied, 239 Conn. 947, 686 A.2d 125 (1996).

Comparing the submission to the decision of the arbitrators,[3] we conclude that the arbitrators' decision conforms to the broad, unrestricted submission. East Shore, Santino and Dostie essentially offer a different interpretation of the contract. "[A] mere difference of opinion as to the construction of the contract does not establish that the arbitrators exceeded their authority." *AFSCME, Council 4, Local 1522, AFL-CIO* v. *Bridgeport*, 53 Conn. App. 702, 706, 734 A.2d 1007 (1999). Therefore, we cannot say that it is likely that the trial court would have granted East Shore's application to

---

[2] See footnote 1.

[3] As previously stated, Franco requested the arbitrators to award specific performance of the agreement, which encompasses the calculation of the purchase price.

vacate the arbitrators' award. Accordingly, the claim fails under the plain error doctrine.

## II

East Shore, Santino and Dostie also claim that the arbitrators improperly failed to use alternate valuation procedures as expressly required by the agreement when the application of the HUD guidelines produced an obvious and inequitable result. They claim that such failure was an imperfect execution of the arbitrators' powers and, therefore, that the trial court improperly denied East Shore's application to vacate the arbitration award. This claim is without merit.

East Shore raised this claim in its application to vacate the award. The court found that (1) the parties had agreed to the utilization of the HUD guidelines and (2) the arbitrators had before them an analysis from at least one of the appraisers that utilized an alternate valuation system from the HUD guidelines.

The agreement provides that the fair market value of the facility and the land it is located on shall be valued "in accordance with the guidelines for appraisals established by the Department of Housing and Urban Development . . . ." East Shore, Santino and Dostie now argue that the arbitrators imperfectly executed their powers by doing exactly what they bargained for in the option agreement. They rely on the following language from the agreement to support their contention that the agreement expressly provides for the use of an alternate valuation procedure: "All fees, costs and expenses of or related to all of the appraisers described above or in connection with any *alternate valuation procedure agreed to [by] both parties* shall be paid one-half (1/2) by the Shareholders and one-half (1/2) by Franco." (Emphasis added.) There is no indication that the parties here agreed to any method of valuation other than the HUD guidelines, and East

Shore, Santino and Dostie cannot be heard to complain that the resulting valuation is not to their liking.

The submission in this case was unrestricted. The arbitrators' use of valuations based on HUD guidelines as called for by the agreement did not provide the trial court with any basis to vacate the award pursuant to § 52-418. Therefore, the court's denial of East Shore's application to vacate the arbitration award was proper.[4]

The judgments are affirmed.

In this opinion the other judges concurred.

---

[4] Franco argues that because Santino and Dostie were not parties to East Shore's application to vacate the award, they are bound by the trial court's judgment regardless of whether East Shore is successful on appeal. In light of our conclusion that the court properly denied East Shore's application to vacate, we do not address this claim.