[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFFS' APPLICATIONS FOR INJUNCTIVERELIEF
Defendants in these related cases. Richard and Patricia Huot and Henry H. Jackson, oppose plaintiffs' July 9, 1997, CT Page 876 application for a temporary injunction preventing defendants from arbitrating certain claims. Plaintiffs claim that defendants are wrongfully attempting to arbitrate claims against the plaintiffs before the National Association of Securities Dealers relating to the purchase of certain limited partnerships. The parties have submitted a joint stipulation of facts. To summarize and substantially simplify, defendants or their mothers purchased limited partnerships through and from plaintiffs in the 1987-89 time period and allege that plaintiffs fraudulently misrepresented the nature of the limited partnerships, made false statements about them, and concealed their true value. The legal issues presented in these two cases are fundamentally identical.
With one exception relating to defendants' preemption claim, discussed below, the precise issues presented in these two cases were raised in an earlier case, Sentra Securities Corporation,Westcott Planning and John W. Westcott III v. Sherry J. McKeever,
Hartford Superior Court, Docket No. CV-97-57112-S, decided by Judge Freed in a July 30, 1997 memorandum of decision [20 CONN. L. RPTR. 256]. In ruling as he did, Judge Freed cited and relied upon, inter alia, Judge Sheldon's detailed decision in the case of Cigna Financial Advisers, Inc. v. Rosen,
CV-94-0705235, decided on January 9, 1995.
Judge Freed framed the issue as being whether Rule 10304 is a rule of subject matter jurisdiction or one of a statute of limitations defense to be asserted by a defendant.[1] (1) As Judge Freed stated in his McKeever decision:
 Three Connecticut Superior Court decisions have discussed the issues presented in this case. They are: Cigna Financial Advisors, Inc. v. Rosen,
CV 94 070523S (J.D. of Hartford/New Britain at Hartford), (January 9 1995; Sheldon, J.); Merrill Lynch Co, Inc. v. Mathes, CV 0126054 (J.D. of Waterbury) (September 1, 1995; West. J.); and Smith Barney, Inc. v. Gillies, CV 94-0705356, (J.D. of Hartford New Britain at Hartford) (February 17, 1995. O'Neill, J.)
 It would be tautological on the part of this court to repeat what has already been written. It would, however, be appropriate to quote from parts of these opinions to express what this court believes to be opinions based on the current state of CT Page 877 Connecticut law and what are well reasoned conclusions based on that law as applied to the facts in these cases.
 As Judge Sheldon pointed out in Cigna Financial Advisors, Inc. v. Rosen, supra, arbitration is a matter of contract and a party cannot be required to submit to arbitration my dispute which he has not agreed to submit. (Citations omitted). It is illogical that Rule 10304 (then Section 15) [sic] to find that this rule is anything but a substantive limitation on the right to gain access to the arbitral forum. Nowhere does the Code establish new defenses to common law or statutory causes of action. This court must conclude that Rule 10304 is a jurisdictional threshold and not a procedural defense to the claim.
Having independently analyzed the issues presented in these cases, I fully concur with the reasoning employed by Judge Freed in McKeever and the result he reached, and also endorse the logic and result of Judge Sheldon in the Rosen case. As Judge Sheldon succinctly put it in Rosen following extensive analysis of this issue: "There is only one reasonable interpretation of Section 15 [the predecessor to Rule 10304]: namely, that the language of Section 15 unequivocally establishes a substantive limitation on the claims that may be submitted to arbitration."
Consequently, for the reasons set out by Judges Sheldon and Freed. I also conclude that Rule 10304 is a jurisdictional threshold and not a procedural defense.
I conclude also, for the reasons stated by Judge Freed inMcKeever, that in the instant cases the applicants have met the prerequisites for injunctive relief. Griffin Hospital v.Commission on Hospitals and Health Care, 196 Conn. 451, 457-58
(1989). There is no adequate remedy at law, applicants are likely to prevail, and the balance of hardships favors applicants. I further agree with Judges Freed and Sheldon that irreparable harm results where parties are forced to expend time, energy and money to defend themselves in a forum in which they never clearly and unmistakably agreed to arbitrate. See Merrill Lynch Co., Inc.v. Mathes, CV-0126054 (J.D. of Waterbury) (September 1, 1995; West, J.); Smith Barney, Inc. v. Gillies, CV-94-0705356 (J.D. of Hartford New Britain at Hartford) (February 17, 1995; O'Neill, CT Page 878 J.).
With respect to the defendants' preemption claim, the defendants argue that federal law requires the plaintiffs to submit all issues of eligibility to the arbitrators for determination and that under the Federal Arbitration Act ("FAA"), any state law to the contrary is preempted. The defendants argue that the arbitrators must decide the issue of arbitrability in the present case because the National Association of Securities Dealers Code of Arbitration Procedure ("NASD Code") expresses a clear and unmistakable intent to arbitrate issues of arbitrability.[2] The defendants further contend that the arbitrators should decide the validity of the time-bar defense. In support of this argument, the defendants cite opinions of the Second, Fifth, Eighth and Ninth Circuits holding that the six year time bar under NASD Code Section 15 is a procedural question for an arbitrator to decide and that because Section 15 is a statute of limitation, it is subject to tolling for claims of fraudulent concealment. Thus, the defendants argue that because the decisions of Judge Freed in McKeever and Judge Sheldon inRosen hold that Section 15 is a jurisdictional threshold and not a procedural defense, they directly conflict with federal law and are therefore preempted.
In response, the plaintiffs essentially argue the following. First, the plaintiffs argue that there is no preemption of Connecticut law by the FAA. According to the plaintiffs, because there is no pre-dispute arbitration agreement and because the NASD Code is silent on this issue, there is no clear and unmistakable indication that the parties agreed to arbitrate the issue of arbitrability.[3] Plaintiffs therefore contend that the issue of arbitrability must be decided by the court. The plaintiffs rely on the holdings of the Third, Sixth, Seventh, Tenth and Eleventh Circuits that Section 15 of the NASD Code is not a statute of limitation but that it goes to the arbitrator's subject matter jurisdiction, and that it is for a court to decide whether an action is time-barred under that provision. Therefore, because the decisions of Judge Freed in McKeever and Judge Sheldon in Rosen are consistent with those of the above mentioned circuits, there is no conflict with federal law and state law is not preempted. Plaintiffs also note that defendants are free to pursue their claims in court if arbitration of them is enjoined.
Section 2 of the FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements, CT Page 879 not-withstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Moses H.Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1,24, 103 S.Ct. 997, 941, 74 L.Ed.2d 765 (1983). "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration. . . . The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . ." Id., 24-25.
In Volt Information Sciences, Inc. v. Board of Trustees ofthe Leland Stanford Junior University, 489 U.S. 468, 477,109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989), the United States Supreme Court held that "[t]he FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration . . . But even when Congress has not completely displaced state regulation in an area, state law may nonetheless be pre-empted to the extent that it actually conflicts with federal law — that is to the extent that it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." (Citations omitted; internal quotation marks omitted.) The Supreme Court explained that the passage of FAA "was motivated, first and foremost, by a congressional desire to enforce agreements into which parties had entered. . . . Accordingly, [the Supreme Court has] recognized that the FAA does not require parties to arbitrate when they have not agreed to do so . . . . It simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." (Citations omitted; internal quotation marks omitted.) Id., 478.
"When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." First Options of Chicago, Inc. v.Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985
(1995). "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clea[r] and unmistakabl[e] evidence that they did so." (Brackets in original; internal quotation marks omitted.) Id. The Supreme Court explained that "given the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration, one can understand why courts might hesitate to CT Page 880 interpret silence or ambiguity on the who should decide arbitrability' point as giving the arbitrators the power, for doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide." Id.
In the present case, therefore, the issues before the court are whether the time-bar provision of the NASD Code section 10304 (previously Section 15) is to be construed and applied by the arbitrators or by the court and whether Connecticut law on this issue is preempted by the FAA.
With regard to the first issue, as noted, the circuits are split.
A number of circuits, including the Third, Sixth, Seventh, Tenth and Eleventh, hold that Section 15 is a substantive limitation on the claims that may be submitted to arbitration and therefore, because it is an issue of arbitrability, it is for the court to decide. See Cogswell v. Merrill Lynch, Pierce, Fenner Smith, Inc., 78 F.3d 474, 480-81 (10th Cir. 1996); Merrill Lynch,Pierce, Fenner Smith v. Cohen, 62 F.3d 381, 383-84 (11th Cir. 1995); Painewebber Inc. v. Hofmann, 984 F.2d 1372, 1379 (3rd Cir. 1993); Edward D. Jones Company v. Sorrells, 957 F.2d 509, 514
(7th Cir. 1992); Roney and Co. v. Kassab, 981 F.2d 894, 899 (6th Cir. 1992) (interpreting New York Stock Exchange Rule 603, a provision identical to Section 15 of the NASD Code, and concluding that "Rule 603 should and does act as a substantive bar in light of the qualifying phrase `eligible for submission to arbitration.'").
In contrast, a number of circuits, including the First, Second, Fifth, Eighth and Ninth hold that Section 15 presents am issue of procedural arbitrability and that therefore, the validity of time-bar defenses to the enforcement of arbitration agreements should be decided by the arbitrator and not the court. See Painewebber, Inc. v. Elahi, 87 F.3d 589, 601-02 (1st Cir. 1996); Painewebber, Inc. v. Bybyk, 81 F.3d 1193, 1200 (2nd Cir. 1996); Smith Barney Shearson, Inc. v. Sherman, 47 F.3d 750, 753
(5th Cir. 1995); FSC Securities Corp. v. Freel, 14 F.3d 1310,1312 (8th Cir. 1994); O'Neel v. National Association ofSecurities Dealers, Inc., 667 F.2d 804, 807 (9th Cir. 1982);Conticommodity Services, Inc. v. Philipp Lion, 613 F.2d 1222,1225 (2nd Cir. 1980). CT Page 881
Having considered this matter, the court concludes that both sides have presented viable arguments as to this issue. I conclude, however, that the reasoning of the Third, Sixth, Seventh, Tenth and Eleventh Circuits is more persuasive.
The United States Supreme Court has held that a court may not presume that the patties agreed to arbitrate the issue of arbitrability and that unless the court finds "clear and unmistakable evidence" to the contrary the issue is for the court to decide. First Options of Chicago, Inc. v. Kaplan, supra,514 U.S. 944. In the present case, there is no pre-dispute arbitration agreement. The parties' arbitration dispute is governed by the provisions of the NASD Code. The Code itself sheds little light on this issue.[4] Some courts have interpreted Section 35 (the predecessor to section 10324) as a clear expression that the patties intended to arbitrate the issue of timeliness. See FSC Securities Corp. v. Freel, supra,
14 F.3d 1312 (holding that Section 15 of the NASD Code is to be determined by the arbitrator because Section 35 of the NASD Code is a "clear and unmistakable expression of, [the parties'] intent to leave the question of arbitrability to the arbitrators.").
This court, however, agrees with the reasoning of the Tenth Circuit in Merrill Lynch, Pierce, Fenner Smith v. Cohen, supra,62 F.3d 381, holding that "Section 35 does not provide `clear and unmistakable' evidence of the parties' intent to allow the arbitrator to determine the timeliness of the claim. . . . Section 35 is a general contract term which gives the arbitrator the power to interpret the NASD Code. Section 15, by contrast, is a specific provision, which delineates the claims that are timely, and thus, not eligible for arbitration. When general [provisions] in a contract are qualified, by the specific provisions, the rule of construction is that the specific provisions in the agreement control. . . . We conclude that, at most, Section 35 creates an ambiguity as to who determines, arbitrability. Because an ambiguity is insufficient to override the presumption that courts determine arbitrability, . . . we conclude that the district court must determine whether the [timeliness] dispute between the [parties] is arbitrable." (Citations omitted: internal quotation marks omitted.); seeCogswell v. Merrill Lynch, Pierce, Fenner Smith Inc., supra,
78 F.3d 480; see also Hartford Accident Indemnity Co. v. TravelersIns. Co., 25 Conn. Sup. 414, 416, 206 A.2d 847 (1964) (". . . . in the absence of a specific agreement to arbitrate [a party] . . . cannot be compelled to do so. but rather has the CT Page 882 right to have his rights and obligations determined in a court of law.")
Unfortunately, there is apparently no guiding case law from our Appellate Court or Supreme Court on this issue. Because the federal case law is itself the subject of disagreement among the: circuits, this court is unable to conclude that the law of this state is clearly in direct conflict with, federal law or that it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Volt InformationSciences, Inc. v. Board of Trustees of the Leland Stanford JuniorUniversity, supra, 489 U.S. 477. On the contrary, it is consistent with the holding of a number of the circuit courts and with the general principle that "the FAA does not require parties to arbitrate when they have not agreed to do so." Id., 478. See also Frager v. Pennsylvania General Ins. Co., 155 Conn. 270, 274,231 A.2d 531 (1967) (". . . a party cannot be compelled to arbitrate a dispute unless he has contracted to do so . . . Whether a particular dispute is arbitrable is a question for the court, unless, by appropriate language, the parties have agreed to arbitrate that question, also.") Accordingly, the court concludes that in the present case the parties did not clearly and unmistakably agree to refer the arbitrability issue to the arbitrator, and that there is no preemption of Connecticut law by the FAA.
Finally, the defendants also argue that NASD Code Section 10106 precludes the plaintiffs from commencing the present action. NASD Code section 10106 provides that "[n]o party, shall, during the arbitration of any matter, prosecute or commence any suit, action or proceeding against any other party touching upon and of the matters referred to arbitration pursuant to this Code."
This argument is not persuasive. NASD Code section 10106 prevents parties from commencing legal proceedings that concern the same issues referred to arbitration. The instant cases involve the issue of whether the plaintiffs are obligated to arbitrate in the first instance, and do not concern any substantive issues referred to arbitration. Accordingly, this court rejects the defendants' contention that Section 10106 alters the result of this case. The present actions were commenced to determine the issue of the eligibility of certain claims for arbitration, and therefore the court finds no violation of NASD Code Section 10106. CT Page 883
CONCLUSION
Defendants' objections are overruled. The applications for injunctive relief in these cases are granted for the reasons stated.
LAVINE, J.