## THE WEITZ COMPANY, INC. *v.* SHORELINE CARE LIMITED PARTNERSHIP
### (14208)

Landau, Schaller and Hennessy, Js.

Argued September 20—decision released November 7, 1995

*Raymond A. Garcia,* with whom, on the brief, was *Gary Sheldon,* for the appellant (defendant).

*Barry J. Waters*, with whom, on the brief, was *Laura E. Evangelista*, for the appellee (plaintiff).

LANDAU, J. The defendant, Shoreline Care Limited Partnership (Shoreline), appeals from the judgment of the trial court granting a permanent injunction restraining it from proceeding with arbitration. Shoreline claims that the trial court improperly granted the permanent injunction in that the court (1) did not have subject matter jurisdiction to determine whether the defendant's claim was arbitrable and (2) failed to conclude that the contract, as amended by the parties, subjected disputes under the contract to arbitration.

The trial court found the following facts. On October 5, 1989, the plaintiff, The Weitz Company, Inc. (Weitz), as a general contractor, entered into a written contract with Shoreline, as owner, for the construction of a continuing care retirement community known as Evergreen Woods located in North Branford. The parties agreed that the construction of the project would be accomplished in two phases. Although the phase I portion of the contract incorporated the American Institute of Architects' general conditions of contracts for construction, it expressly deleted the arbitration section of the general conditions. The contract further expressly deleted all references to arbitration of the phase I contract.

By agreement between the parties, dated April 30, 1991, the parties modified the terms of the October 5, 1989 contract. Under the amended agreement, any and all issues, claims or disputes between the parties concerning the phase II portion of the contract were made subject to arbitration.

On June 7, 1994, Shoreline filed a demand for arbitration claiming that Weitz had breached the contract, and further claiming that the parties had agreed to arbitrate all disputes under phase I and phase II of the contract.

Weitz filed an objection claiming that the alleged breach was not arbitrable because it pertained to phase I. An arbitrator determined that the issue of arbitrability should be decided by the arbitrator and ordered both parties to proceed. Weitz thereafter filed its application for an injunction.

After finding the necessary prerequisites of irreparable harm and no adequate remedy at law, the trial court issued a permanent injunction[1] restraining Shoreline from proceeding with the arbitration it demanded on June 7, 1994. The court found that the phase II work was subject to arbitration based on the April 30, 1991 agreement, and the phase I work was not subject to arbitration because of the terms of the October 5, 1989 agreement. The court further found that the October 5, 1989 agreement was not amended insofar as it applied to arbitration of phase I disputes.

Shoreline posits that the trial court failed to apply the required "positive assurance" test. This test, first articulated in *United Steelworkers of America* v. *Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960), is employed by the courts in our state to determine whether a dispute is arbitrable. See, e.g., *Policemen's & Firemen's Retirement Board* v. *Sullivan*, 173 Conn. 1, 14, 376 A.2d 399 (1977); *Board of Police Commissioners* v. *Maher*, 171 Conn. 613, 621, 370 A.2d 1076 (1976). Weitz argues that the trial court applied the appropriate standard, and merely failed to state the talismanic "positive assurance" language. Weitz claims the court's ruling is no less binding as a result of this oversight.

We may reverse or modify the decision of the trial court if we determine that the factual findings are clearly erroneous in view of the evidence and pleadings

---

[1] After the trial court found cause that a temporary injunction should issue, the parties consented to the entry of a permanent injunction.

in the whole record, or that the decision is otherwise erroneous in law. Practice Book § 4061. In this case the facts are not in dispute. The trial court received documents in evidence and heard arguments as to their interpretation and meaning. Therefore, we need only to determine whether the trial court was incorrect as a matter of law. *Morton Buildings, Inc.* v. *Bannon*, 222 Conn. 49, 53, 607 A.2d 424 (1992).

To resolve this issue, we apply the positive assurance test. " 'Under the positive assurance test, "judicial inquiry . . . must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance. . . . An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." ' " *John A. Errichetti Associates* v. *Boutin*, 183 Conn. 481, 488–89, 439 A.2d 416 (1981), quoting *Board of Education* v. *Frey*, 174 Conn. 578, 581–82, 392 A.2d 466 (1978). "Whether a particular dispute is arbitrable is a question for the court, unless, by appropriate language, the parties have agreed to arbitrate that question, also." *Welch Group, Inc.* v. *Creative Drywall, Inc.*, 215 Conn. 464, 467, 576 A.2d 153 (1990), quoting *Frager* v. *Pennsylvania General Ins. Co.*, 155 Conn. 270, 274, 231 A.2d 531 (1967). Whether the parties have agreed to submit the merits of the dispute, as well as the question of arbitrability, depends on the intention manifested in the agreement the parties have made. *Bridgeport* v. *Bridgeport Police Local 1159*, 183 Conn. 102, 104, 438 A.2d 1171 (1981). The manifestation of arbitrability may be by express provision to that effect or the use of broad terms; *White* v. *Kampner*, 229 Conn. 465, 472, 641 A.2d 1381 (1994); and courts must look to the plain language of the contract and construe the contract as

a whole when determining the intent of the parties. Id., 473.

Here, the parties expressly agreed not to submit phase I of the contract to arbitration. In the supplementary conditions for phase I work, the parties contracted to delete the standard arbitration clause found in the American Institute of Architects' general conditions contract they employed for this project. Therefore, no authority exists under the phase I contract to submit the issue of arbitrability to the arbitrators. While the language of the phase I contract makes it plain that disputes arising under it are not arbitrable, the language of the phase II contract leaves no doubt that the arbitration clause was inserted for phase II work only. Because this language is clear and unambiguous, and resolving any doubts in favor of coverage, it provides positive assurance that the parties intended that phase I disputes were not subject to arbitration.

We conclude that because the parties contracted not to submit the issue of arbitrability to an arbitrator as to phase I, the trial court had proper subject matter jurisdiction to determine the arbitrability of the claim. We further conclude that the trial court's decision to enjoin the plaintiff from proceeding with arbitration was proper as a matter of law.

The judgment is affirmed.

In this opinion the other judges concurred.