BARBARA SCINTO ET AL. *v.* HOWARD SOSIN ET AL.
(AC 17441)

O'Connell, C. J., and Foti and Sullivan, Js.

Argued September 15—officially released December 15, 1998

*J. Daniel Sagarin,* with whom were *David A. Slossberg* and *Joseph F. McKeon, Jr.,* and, on the brief, *Christopher C. Vaugh,* for the appellants (defendants).

*Louis R. Pepe,* with whom was *Richard F. Wareing,* for the appellees (plaintiffs).

*Opinion*

FOTI, J. The defendants, Howard B. Sosin and Susan F. Sosin, appeal from an order of the trial court granting a temporary and permanent injunction barring them from forcing the plaintiffs into arbitration regarding a construction contract between the defendants and the plaintiff R. D. Scinto, Inc. (R. D. Scinto). The plaintiffs

Barbara Scinto and Robert Scinto are guarantors of the obligations of the corporate plaintiff. On appeal, the defendants claim that the trial court improperly (1) failed to defer the issue of arbitrability to the arbitration panel, (2) determined that the plaintiff guarantors were not bound to arbitrate, (3) limited the scope of the arbitration and (4) employed its injunctive powers. We affirm the judgment of the trial court.

Sometime in 1986, the individual plaintiffs, Barbara Scinto and Robert Scinto, began construction of a house in Fairfield. The Scintos were the owners of R. D. Scinto, a construction company that began construction on the project. The house was to be approximately 20,000 square feet and to cost several million dollars. In the spring of 1990, the Scintos began having financial difficulty. When banks and subcontractors began calling in the loans that the Scintos had taken out to finance the construction of their house, they decided to sell the house to pay off their debts.

In May or June, 1990, Robert Scinto received a telephone call from Howard B. Sosin, asking whether Scinto would be interested in selling the house. Scinto replied that he might be interested if the price was right. The defendants later viewed the unfinished house and decided to buy it.

In June, 1990, the two men entered into an oral contract (sale contract) for the sale of the unfinished house for a price of $5 million. They entered into another oral contract (construction contract) calling for R. D. Scinto to finish the construction of the house by October 1, 1991, for $3.6 million. The contracts were memorialized and executed on November 15, 1990.[1]

---

[1] The sale contract was not signed by Barbara Scinto but by her attorney, Paul A. Sobel. The construction contract was signed by the defendants and Robert Scinto as president of R. D. Scinto.

In addition to the construction contract entered into by R. D. Scinto, the Scintos each executed personal guarantees of R. D. Scinto's performance of the construction contract. Article 9.1.7.1 of the construction contract provides: "Guarantee: For valuable consideration, Robert D. Scinto and Barbara A. Scinto jointly and severally, personally and expressly guarantee the performance of all of the terms and provisions of the Agreement by the Contractor without condition or exception." This clause appeared on the last page of the contract above the signature lines. Only Robert Scinto signed the construction contract, both as president of R. D. Scinto, and personally. Barbara Scinto, who was not present at the closing, signed a similar guarantee that was separate from the rest of the contract.[2]

R. D. Scinto began work on the house for the defendants following the execution of the construction contract. There were, however, numerous delays and problems with the construction. As of May, 1992, the house still was unfinished. On May 1, 1992, the defendants and R. D. Scinto executed "Addendum Number 2" to the construction contract, in which were several changes relating to the construction of the house and payment schedule. Additionally, the addendum contained the following clause: "For valuable consideration, paid by the Contractor to the Owner, Barbara A. Scinto is released by Owner as Contractor's Guarantor

---

[2] In their brief, the defendants indicate that the guarantee signed by Barbara Scinto was inserted into the construction contract on the page before the signature page. The appendix to their brief does reflect this. The plaintiffs' exhibit 2, however, which is the copy of the construction contract received from the trial court, does not reflect the defendants' assertion. In fact, the signature page is found on page eight of the contract, while Barbara Scinto's guarantee is found three pages later, at the end of Schedule A.

This court assumes that this is merely a mistake on the defendants' part. We will, however, not rely on the defendants' assertions as to where Barbara Scinto's guarantee was inserted in the construction contract. Instead, we will rely on the exhibit as it arrived from the trial court.

of the obligations and terms of the Agreement." In December, 1992, the house remained unfinished and over budget, and R. D. Scinto had been replaced by other contractors and subcontractors.

In addition to the guarantee clauses, the construction contract contained the following arbitration clause: "Any controversy or Claim arising out of or related to the Contract, or the breach thereof, shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator or arbitrators may be entered in any court having jurisdiction thereof, except controversies or Claims relating to aesthetic effect and except those waived as provided for in Subparagraph 4.3.5."

The defendants attempted to settle certain disputes with the plaintiffs under article 4.4 of the "General Conditions for the Contract for Construction." Article 4.4 required the parties to send their disputes to the architect for resolution. The project architect, Ferris Architects, was unable to resolve the disputes between the defendants and the plaintiffs. Therefore, the defendants, in November, 1996, commenced arbitration proceedings with the American Arbitration Association pursuant to article 4.5 of the general conditions.

On April 1, 1997, the plaintiffs instituted the present action seeking a temporary and permanent injunction barring the defendants from arbitrating any claims involving the guarantees and for any work done prior to November 15, 1990, and for the work performed by any contractors other than R. D. Scinto. The trial court held a full hearing allowing both sides to present arguments and testimony. Thereafter, the trial court allowed the parties to brief the issues. The trial court issued a temporary and permanent injunction barring the defendants from arbitrating against the Scintos, as guarantors, and against R. D. Scinto for any work done prior

to November 15, 1990. The defendants appeal from that judgment and raise numerous claims.

## I

The first issue we must decide is whether the trial court properly determined the issue of arbitrability. We conclude that it did.

The defendants argue that the policy of Connecticut courts is to encourage arbitration over litigation and that the trial court lacks jurisdiction to determine whether the parties agreed to arbitrate in the first place. We are not persuaded by this argument.

Although the courts of this state encourage arbitration as a means of alternative dispute resolution, there are limits to this policy. "Arbitration is a creature of contract and without a contractual agreement to arbitrate there can be no arbitration." *Wesleyan University* v. *Rissil Construction Associates, Inc.*, 1 Conn. App. 351, 354, 472 A.2d 23, cert. denied, 193 Conn. 802, 474 A.2d 1259 (1984). "No one can be directed to arbitrate a dispute who has not previously agreed to do so . . . ." *Gores* v. *Rosenthal*, 150 Conn. 554, 557, 192 A.2d 210 (1963); *Batter Building Materials Co.* v. *Kirschner*, 142 Conn. 1, 5, 110 A.2d 464 (1954); see *Metal Products Workers Union, Local 1645, UAW-AFL-CIO* v. *Torrington Co.*, 358 F.2d 103, 106 (2d Cir. 1966) (no policy that favors forcing party who has not agreed to arbitrate to do so).

The law in Connecticut is clear. " 'Whether a particular dispute is arbitrable is a question for the court, unless, by appropriate language, the parties have agreed to arbitrate that question, also.' " *Weitz Co.* v. *Shoreline Care Ltd. Partnership*, 39 Conn. App. 641, 644, 666 A.2d 835 (1995); *College Plaza, Inc.* v. *Harlaco, Inc.*, 152 Conn. 707, 708, 206 A.2d 832 (1965). Whether the parties intended to submit the issue of arbitrability, as well as

the merits of a claim, to an arbitrator clearly depends on the parties' intent. Whether the parties intended to arbitrate the issue of arbitrability may be determined from an express provision to that effect or from the use of broad terms. *Welch Group, Inc.* v. *Creative Drywall, Inc.*, 215 Conn. 464, 467, 576 A.2d 153 (1990); *Weitz Co.* v. *Shoreline Care Ltd. Partnership*, supra, 644. Unless the agreement shows such intent, the determination of the question of arbitrability remains a function of the court. See *United Steelworkers of America* v. *Warrior & Gulf Navigation Co.*, 363 U.S. 574, 583 n.7, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960). The courts, however, must not fail to examine the plain language of the contract and look at it as a whole in determining the parties' intent. *Weitz Co.* v. *Shoreline Care Ltd. Partnership*, supra, 644–45.

In the present case, the defendants and the plaintiffs entered into a "Standard Form of Agreement Between Owner and Contractor," a boilerplate construction contract drafted by the American Institute of Architects. The parties merely filled in the blanks regarding the specific details. Article 1 of the construction contract states: "The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral." As mentioned previously, the contract also contained a very broad arbitration clause covering "[a]ny controversy or Claim arising out of or related to the Contract . . . ."

The defendants rely on the broad language of the arbitration clause to support their claim that it encompasses the issue of arbitrability. The defendants' brief cites Connecticut case law supporting this claim. They rely on *Gary Excavating, Inc.* v. *North Haven*, 164 Conn. 119, 318 A.2d 84 (1972), in which the court held that "by virtue of the broad scope of [the arbitration clause], the appropriate body to hear claims regarding

procedural prerequisites to arbitration must be the arbitration panel." Id., 125. The defendants also cite *International Assn. of Fire Fighters, Local 1339, AFL-CIO* v. *Waterbury*, 35 Conn. App. 775, 647 A.2d 361 (1994), in which this court followed that same line of reasoning. "The authority of an arbitrator to adjudicate the controversy is limited only if the agreement contains express language restricting the breadth of issues, reserving explicit rights, or conditioning the award on court review. In the absence of any such qualifications, an agreement is unrestricted." (Internal quotation marks omitted.) Id., 778. Additionally, at oral argument, the defendants cited *Fraulo* v. *Gabelli*, 37 Conn. App. 708, 714–15, 657 A.2d 704 (1995), cert. denied, 239 Conn. 947, 686 A.2d 125 (1996), for the proposition that the issue of arbitrability was a matter for the arbitrator to decide.

The cases on which the defendants rely are distinguishable from the present case. In *Gary Excavating, Inc.*, the *trial court* determined whether the parties had fulfilled the prerequisites to arbitration, not the arbitrator. *Gary Excavating, Inc.* v. *North Haven*, supra, 164 Conn. 121. In *International Assn. of Fire Fighters, Local 1339, AFL-CIO*, the trial court was called on to vacate an arbitration award. The underlying issue of whether the parties had agreed to arbitrate was not at issue. The issue involved whether the arbitrator had overstepped its limits as defined in the agreement. The issue of whether the broad arbitration clause would have prevented the trial court from determining whether the parties had agreed to arbitrate was not before either the trial court or this court.

In *Fraulo*, the trial court determined that the issue of arbitrability was an issue for the arbitration panel. "[T]he arbitrability of the dispute in [*Fraulo*] was challenged by the respondents in their motion to vacate the arbitration award. The *trial court* determined that the

question of arbitrability was a question for the arbitrator. The respondents [did not challenge] this ruling on appeal." (Emphasis added.) *Fraulo* v. *Gabelli,* supra, 37 Conn. App. 715 n.7.

The arbitration clause defines the scope of arbitration. It, however, does not provide for arbitration of arbitrability. The defendants' claim that the broad arbitration clause denies the trial court the power to determine the underlying issue of arbitrability is unsupported. We hold that the general rule of *Weitz Co.* v. *Shoreline Care Ltd. Partnership,* supra, 39 Conn. App. 644, applies and that the broad arbitration clause does not, by itself, deny the trial court jurisdiction to decide the matter of arbitrability because the parties did not manifest an intention to arbitrate the issue of arbitrability.

## II

We next address the defendants' claim that Robert Scinto and Barbara Scinto were bound to arbitrate on the basis of their executed guarantee clauses. We hold that the Scintos' guarantees did not obligate them to arbitrate.

## A

The defendants argue that Barbara Scinto, a guarantor, but not a signatory to the contract is bound to arbitrate. We disagree.

In the cases cited by the defendants, the parties who were compelled to arbitrate the issue of arbitrability were signatories to the underlying contracts. Neither the defendants nor the plaintiffs cite any Connecticut case law that deals with the liability of guarantors with respect to an arbitration clause, and our own research has failed to find any. We therefore look to other jurisdictions for guidance on this issue. The trial court cited *Asplundh Tree Expert Co.* v. *Bates,* 71 F.3d 592, 595

(6th Cir. 1995), for the general proposition that a guarantor who is not a signatory to a contract containing an arbitration clause is not bound by such a clause. The defendants disagree with the trial court's interpretation of *Asplundh Tree Expert Co.* because the guarantor in that case was held to be liable to the arbitration clause. The defendants, therefore, urge us to do likewise. We cannot do so.

*Asplundh Tree Expert Co.* is clearly distinguishable from the present case. In *Asplundh Tree Expert Co.*, the guarantor "was more than a mere guarantor." Id., 594. The guarantor, Asplundh Tree Expert Company (Asplundh), had "the right to make additions to, or impose limitations upon [the signatory's] responsibilities and privileges . . . ." Id., 595. Asplundh also executed a letter after the original contract to " 'clarify additional items not covered by the employment agreement . . . .' " Id., 596. The United States Court of Appeals for the Sixth Circuit found that Asplundh was a signatory to the contract because of the additional responsibilities that it had placed on itself. Here, Barbara Scinto never placed additional responsibilities on herself, and there was no evidence that the defendants ever asked that she take on any.

Our Supreme Court has held that in deciding whether parties to a contract have agreed to arbitrate disputed issues, the courts must apply the "positive assurance" test first set out by the United States Supreme Court in *United Steelworkers of America* v. *Warrior & Gulf Navigation Co.*, supra, 363 U.S. 574; *Board of Education* v. *Frey*, 174 Conn. 578, 582, 392 A.2d 466 (1978). " '[J]udicial inquiry . . . must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance. . . . An order to arbitrate the particular grievance should not be denied unless it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers

the asserted dispute. Doubts should be resolved in favor of coverage.' " (Emphasis in original.) *Board of Education* v. *Frey*, supra, 582.

The construction contract does not support the defendants' position that Barbara Scinto's guarantee was incorporated into the contract.[3] The guarantee gives her no rights to alter the responsibilities or privileges of the signatory, R. D. Scinto. Nothing in the arbitration clause refers to the guarantee. Nothing in Barbara Scinto's guarantee refers to the arbitration clause. In whole, we believe that there was sufficient evidence for the trial court to determine with positive assurance that Barbara Scinto's guarantee was not part of the construction contract and, therefore, not subject to the arbitration clause.

The trial court also relied on *Grundstad* v. *Ritt*, 106 F.3d 201 (7th Cir. 1997). In *Grundstad*, the United States Court of Appeals for the Seventh Circuit reversed the District Court's decision that a guarantee unambiguously expressed the guarantor's intent to be personally bound by an arbitration clause in the underlying agreement. The contract contained a guarantee clause just below the signature lines in which the guarantors "guarantee[d] all of the provisions of the within Agreement, and especially the performance . . . ." Id., 203. The Seventh Circuit explained the District Court's holding: "1) because the guaranty was set forth on the same document as the Agreement; 2) because the guaranty and the Agreement made reference to each other; and 3) because the Agreement and the guaranty were executed on the same day, the Agreement and the guaranty were 'inextricably tied,' and 'part of the same agreement.' Specifically, the district court determined that the 'general principles of contract law as well as the interplay between the parties' Agreement and the

---

[3] See footnote 2.

guaranty favor the applicability of the arbitration provision as to Grundstad.' Thus, the court concluded that Grundstad, as guarantor of the agreement . . . was bound to arbitrate the issue of his liability as a guarantor on account of the arbitration clause contained within the Agreement." Id. The Seventh Circuit strongly disagreed with the District Court, stating, "Nowhere within the document does the guaranty even refer to any undertaking by the guarantors to be bound personally to arbitrate disputes arising from the guaranty. The guaranty simply states that [the guarantors] 'hereby guarantee' the Agreement." Id., 205.[4] The Seventh Circuit distinguished the situation in which a separate guarantee specifically references the arbitration clause; there, the guarantor is bound by the arbitration clause. Id., 204 n.3, citing *Gingiss International, Inc.* v. *Bormet*, 58 F.3d 328 (7th Cir. 1995).

The defendants take issue with the trial court's reading of *Grundstad*. The defendants argue that because the Seventh Circuit held that the District Court improperly held that "Grundstad, as a matter of law, agreed by virtue of his guaranty . . . to arbitrate"; *Grundstad* v. *Ritt*, supra, 106 F.3d 205; the Seventh Circuit's ruling does not mean that the "inextricably interwoven" approach is incorrect. While we may agree with the defendants on that particular issue, we still believe that the trial court correctly relied on the Seventh Circuit's opinion. Moreover, we agree with the Seventh Circuit's approach. As in *Grundstad*, there is no evidence here that suggests that Barbara Scinto's guarantee was executed in the construction contract. It was not referenced in the arbitration clause and, more important, it did not

---

[4] In two footnotes, the *Grundstad* court cited cases where a guarantor of a contract was not bound by an arbitration clause in a contract unless the guarantor expressly intended to be bound by the arbitration clause. See *McCarthy* v. *Azure*, 22 F.3d 351, 355 (1st Cir. 1994); *Interocean Shipping Co.* v. *National Shipping & Trading Corp.*, 523 F.2d 527, 538 (2d Cir. 1975), cert. denied, 423 U.S. 1054, 96 S. Ct. 785, 46 L. Ed. 2d 643 (1976).

reference the arbitration clause. Even if we applied the "inextricably interwoven" approach urged by the defendants, we do not see how Barbara Scinto's guarantee could be "inextricably interwoven" with the construction contract.

Furthermore, addendum number two to the construction contract specifically released Barbara Scinto from her obligations as guarantor. The defendants argue that the trial court improperly considered the release. They state that "there is a significant issue as to whether the release fails for lack of consideration," and that "there was no basis from which the court could conclude that said release was in fact valid." We do not agree.

While there was no evidence presented at the hearing as to the exact amount of consideration given by the contractor to the defendants for Barbara Scinto's release, the trial court found that consideration was given. The plaintiffs' exhibit eight, a copy of addendum number two, states: "For valuable consideration paid by the Contractor . . . ." The trial court found that "[t]his is not a case where a prior agreement merely expired or otherwise was revoked after the facts supporting a dispute occurred but before a demand for arbitration was made. Here, Barbara Scinto for valuable consideration was released as guarantor of the obligations of the underlying agreement." This is a factual finding by the trial court, supported by the record, which we will not disturb.

Additionally, the defendants waived the issue of Barbara Scinto's guarantee at the injunction hearing.[5] While

---

[5] "The Court: Just let me clear something up. How do you claim that Mrs. Scinto is involved in this? When was that released? Are you still pressing that?

"[Defendants' Counsel]: I'm not pressing that.

　　　　　　　* * *

"[Defendants' Counsel]: That is not being pressed.

"The Court: Okay.

"[Defendants' Counsel]: So, I won't even respond. It's not being pressed.

the trial court's decision does not reference this apparent waiver, the plaintiffs pointed to it in their brief, and the defendants failed to respond in their reply brief to the claim that the issue had been waived. The trial court correctly held that Barbara Scinto was not subject to arbitration.

## B

We now address the trial court's decision regarding Robert Scinto. The issue is not as clear cut as with Barbara Scinto because Robert Scinto did sign the construction contract in his personal capacity. The issue, however, remains the same: Did Robert Scinto contract to be bound by arbitration on the terms of his guarantee alone? As with Barbara Scinto, the positive assurance test in *Board of Education* v. *Frey,* supra, 174 Conn. 578, applies. The trial court must have been able to find with positive assurances that Robert Scinto did not agree to be bound to arbitration on the basis of his guarantee clause.

We again look to the Seventh Circuit's decision in *Grundstad* v. *Ritt,* supra, 106 F.3d 201. *Grundstad* parallels this case. The guarantee clause of the contract in *Grundstad* appeared on the same page, just below the signature lines. Id., 203. In this case, the guarantee clause appears just above the signature lines. In both cases, the guarantors signed the broad guarantee clauses, but neither of the guarantee clauses specifically referenced the arbitration clauses attached to the underlying agreements.

The Seventh Circuit held that "the Agreement before us, including the particular language referred to, standing alone, does not *unambiguously* express Grunds-

---

"The Court: How about Mr. Scinto? Is he—

"[Defendants' Counsel]: We're still pressing forward on his guarantee liability. A release of one coguarantor does not in law operate as a release of all guarantors."

tad's intent to be *personally* bound by the arbitration clause within the Agreement. Nowhere within the document does the guaranty even refer to any undertaking by the guarantors to be bound personally to arbitrate disputes arising from the guaranty." (Emphasis in original.) Id., 205. Although the facts of this case are similar to those in *Grundstad*, the defendants urge us to find that the trial court's reliance on *Grundstad* is wrongly placed. We cannot do so. The Seventh Circuit's reasoning was sound. It recognized, as do we, that arbitration is a creature of contract and, barring an unambiguous finding that the parties agreed to arbitrate, they will not be forced to do so.

The Seventh Circuit did not go so far as to state that a nonsignatory would never be held to arbitration. The court stated that "a nonsignatory guarantor of an agreement containing an arbitration provision may be bound by the arbitration provision when the particular guaranty *explicitly* incorporates the underlying agreement by reference." (Emphasis in original.) Id., 204 n.4. As in part II A of this opinion, we agree with the reasoning in *Grundstad* and hold that the trial court properly relied on it. The trial court found that the addenda to the construction contract were signed by Robert Scinto in his capacity as R. D. Scinto's president only and not in his personal capacity. The trial court's findings that he did not contract to be bound by arbitration is a factual finding. We will not disturb that finding because it does not appear to be a clearly erroneous decision unsupported by the record.

The defendants also argue that a nonsignatory can be bound to arbitrate if the interests of the parties are "directly related." The defendants rely on *Isidor Paiewonsky Associates, Inc.* v. *Sharp Properties, Inc.*, 998 F.2d 145 (3d Cir. 1993). In *Sharp Properties, Inc.*, a subtenant was bound by the arbitration proceedings between the tenant and the landlord. We find that *Sharp*

*Properties, Inc.*, is distinguishable from the present case. In *Sharp Properties, Inc.*, the subtenant was bound by the arbitration award terminating the tenancy because he, as a subtenant, had interests "strictly derivative of that of the head tenant." Id., 154. The subtenant was bound by the arbitration award because of real property law, not because of the characteristics of arbitration law.

The defendants cite additional cases to support their position. In *Barrowclough* v. *Kidder, Peabody & Co.*, 752 F.2d 923 (1985), overruled on other grounds, *Pritzker* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110 (3d Cir. 1993), the United States Court of Appeals for the Third Circuit held that beneficiaries of a party to a retirement plan were bound by the arbitration agreement between the employee and employers. In *Cecil's, Inc.* v. *Morris Mechanical Enterprises, Inc.*, 735 F.2d 437 (11th Cir. 1984), a subcontractor was held liable to a contractor out of an arbitration award against the contractor where the subcontractor had specifically agreed to indemnify the contractor.

None of those cases addresses the issue of whether a guarantor who is not a signatory to a contract can be bound by the contract's arbitration clause. The *Barrowclough* court held merely that the beneficiaries could not move to stay the arbitration proceeding between the parties to the underlying agreement. *Barrowclough* v. *Kidder, Peabody & Co.*, supra, 752 F.2d 938–39. The *Cecil's, Inc.*, court dealt with an indemnification clause, not the determination of whether the subcontractor was forced to arbitrate claims against it under the indemnification clause.

We find that neither *Barrowclough* nor *Cecil's, Inc.*, is dispositive of the issue before us. This case does not present a situation in which a third party is attempting to block an arbitration proceeding or enforcement of

an arbitration award. This case involves a guarantor to a contract who claims not to be personally required to arbitrate issues in dispute between the signatories. On that basis, we find that the "directly related" test is not applicable to this case.

Additional support for the plaintiffs' position that Robert Scinto was not bound to arbitrate is *Compania Espanola de Petroleos, S.A.* v. *Nereus Shipping, S.A.*, 527 F.2d 966 (2d Cir. 1975), cert. denied, 426 U.S. 936, 96 S. Ct. 2650, 49 L. Ed. 2d 387 (1976). The United States Court of Appeals for the Second Circuit held that a guarantor of a shipping contract was bound to arbitrate under the broad arbitration clause. Id., 973. In *Compania Espanola de Petroleos, S.A.*, however, the guarantor, in the event of a default by the guaranteed was to " 'assume the rights and obligations of [the guaranteed] on the same terms and conditions as contained in the [agreement],' as well as 'perform the balance of the contract.' " Id.

Robert Scinto's guarantee does not obligate him to assume any rights or obligations of R. D. Scinto in the event of a breach. He merely guaranteed that R. D. Scinto would perform *its* contract with the defendants. The defendants would have us place Robert Scinto in the shoes of R. D. Scinto upon the date of the breach. Because the guarantee does not call for such a result, we refuse to do so. Accordingly, we find that the trial court correctly concluded that Robert Scinto was not bound to arbitrate based solely upon his personal guarantee.

III

As stated previously, R. D. Scinto was a signatory to the construction contract. As a signatory, there is no question that R. D. Scinto is bound by the arbitration clause found in article 4.5 of the contract's general conditions. The issue we must resolve is whether the

trial court correctly limited the scope of the arbitration to those issues arising from construction occurring after November 15, 1990. We hold that it did.

A

The trial court's memorandum of decision focused on whether the plaintiffs had indeed contracted to arbitrate their disputes. The trial court relied on *White* v. *Kampner*, 229 Conn. 465, 641 A.2d 1381 (1994), in making its decision. In *White*, our Supreme Court held that "because we favor arbitration, we will defer to [arbitration] *if the contractual arbitration provisions fall within the grey area of arbitrability*, employing the 'positive assurance' test . . . ." (Emphasis added.) Id., 472–73. The trial court correctly held, under *White*, that when the issue of arbitrability does *not* fall within that so-called "grey area," the court makes the decision of arbitrability because the positive assurance test does not apply. We find that the trial court followed the positive assurance test of *Board of Education* v. *Frey*, supra, 174 Conn. 578.

In determining whether a party is bound to arbitrate, the courts look at the language employed in the contract. " 'A contract is to be construed as a whole and all relevant provisions will be considered together.' *Lar-Rob Bus Corporation* v. *Fairfield*, 170 Conn. 397, 407, 365 A.2d 1086 (1976) . . . ." (Citations omitted.) *Barnard* v. *Barnard*, 214 Conn. 99, 109, 570 A.2d 690 (1990). "A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity and words do not become ambiguous simply because lawyers or laymen contend for different meanings." (Internal quotation marks omitted.) Id., 110.

The defendants argue that the trial court interfered with the jurisdiction of the arbitration panel by deciding what issues were subject to arbitration. The defendants look to the language of the contract, specifically article

2, which states: "The contractor shall execute the entire Work described in the Contract Documents, except to the extent specifically indicated in the Contract Documents to be the responsibility of others or as follows: Work of this contract includes the completion of a 20,750 square foot residence and a 2,400 square foot maid's house currently under construction and located at 640 Sasco Hill Road, Fairfield, Connecticut." The defendants also rely on article 3.3.4 of the general conditions, which states that the contractor will be responsible for work performed under the contract. The defendants argue that this means that R. D. Scinto was responsible for inspecting work done prior to the execution of the November 15, 1990 agreement. We do not agree with that interpretation.

The construction contract specifically states that its effective date was November 15, 1990. Article 8.1.2 of the general conditions states that "the date of commencement of the Work is the date established in the Agreement." The defendants urge us to find that the broad arbitration clause covers all disputes arising from the construction of this house, while the construction contract specifically limits the performance by R. D. Scinto to that work performed after the execution date of November 15, 1990. Reading the contract in its entirety, however, leads us to believe that the two parties agreed to some limitation as to their respective duties. The defendants were not responsible to pay R. D. Scinto for work done prior to November 15, 1990. R. D. Scinto, in turn, was not responsible to perform work for the defendants prior to November 15, 1990.

The trial court also modified the plaintiffs' requested order limiting the arbitration. The court eliminated language in the order that would have limited the arbitrator's ability to decide what work was completed before

November 15, 1990.[6] That decision was fully within the arbitrator's jurisdiction.

Additionally, the court held that R. D. Scinto did not have to arbitrate disputes arising from work performed by contractors and subcontractors not under R. D. Scinto's control. Article 5 of the general conditions defines subcontractors as those who have "a direct contract with the Contractor to perform a portion of Work at the site." Once a contractor and all of its subcontractors have been removed from the project and replaced by a new contractor and subcontractors, their liability does not extend to the work done by their replacements.

The trial court came to the same conclusions. Its order does not prevent the arbitration of issues arising during the time that R. D. Scinto was on the job. The defendants are free to arbitrate all issues of what "completed" work means for work that was performed by R. D. Scinto after November 15, 1990, and prior to R. D. Scinto's replacement by subsequent contractors.

B

Because the defendants claim that the trial court improperly read the sale contract and the construction contract together, we briefly address the application of the parol evidence rule to this case. The defendants state that "[a]s the basis for issuing its order precluding arbitration . . . on construction prior to November 15, 1990, the court considered the 'as is' clause in the separate Sales Agreement between the Sosins and Scintos in determining the scope of the arbitration provision of the Construction Contract. The court concluded that by taking the property 'as is', the Sosins supposedly

---

[6] The trial court gave its reason for deleting the language on the plaintiffs' order. "Court only deletes this language because it concludes arbitrator has authority to make his/her own determination of that construction work completed before November 15, 1990."

relinquished their right to arbitrate disputes relating to construction prior to November 15, 1990. . . . The court's reliance on the Sales Agreement to vary the terms of the Arbitration clause violated the parol evidence rule." Section eight of the sale contract released the Scintos from liability on all but any latent defects in the house.[7]

"The parol evidence rule prohibits the use of extrinsic evidence to vary or contradict the terms of an integrated written contract. *Giorgio* v. *Nukem, Inc.*, 31 Conn. App. 169, 173–74, 624 A.2d 896 (1993); see also 2 Restatement (Second), Contracts § 213 (1981). . . . *Foley* v. *Huntington Co.*, 42 Conn. App. 712, 733, 682 A.2d 1026, cert. denied, 239 Conn. 931, 683 A.2d 397 (1996)." (Internal quotation marks omitted.) *Kim* v. *Magnotta*, 49 Conn. App. 203, 214, 714 A.2d 38, cert. granted on other grounds, 247 Conn. 905, 720 A.2d 514 (1998). "The rule does not forbid the presentation of parol evidence, but prohibits the use of such evidence to vary or contradict the terms of the [integrated] contract." *Foley* v. *Huntington Co.*, supra, 733, citing *TIE Communications, Inc.* v. *Kopp*, 218 Conn. 281, 288, 589 A.2d 329 (1991). " 'The operative question becomes whether parol evidence is offered to contradict the writing or to aid in its interpretation. *Bead Chain Mfg. Co.* v. *Saxton Products, Inc.*, 183 Conn. 266, 273, 439 A.2d 314 (1981).' *Shawmut Bank Connecticut, N.A.* v. *Connecticut Limousine Service, Inc.*, 40 Conn. App. 268, 274–75, 670 A.2d 880 [cert. denied, 236 Conn. 915, 673 A.2d 1143] (1996)." *Foley* v. *Huntington Co.*, supra, 734.

---

[7] Section eight of the sale contract provided: "Buyer agrees that he has examined the premises and is fully satisfied with the physical condition and value of the land, buildings and fixtures, if any, and presently accepts them 'as is' (except for any conditions not reasonably discoverable by the Buyer and not disclosed in any building, water or radon test report). The Buyer further agrees that he is not relying upon any representations, information, warranty or promises made by the seller, his agents or any broker, which are not specifically set forth in this agreement as to the character, quality, use, value, quantity, condition or other matter related thereto."

Before we examine the defendants' claim that the trial court improperly construed the two contracts together, we must examine whether the construction contract was fully integrated. Article 1 of the construction contract states that it "represents the entire and integrated agreement between the parties . . . ." Nothing in the contract or its addenda leads us to believe otherwise. We therefore agree with the defendants that the construction contract is fully integrated and that the parol evidence rule would bar the trial court from using extrinsic evidence to vary or contradict the terms of the construction contract.

We disagree, however, that the trial court violated the parol evidence rule. The trial court's decision states that "reference to the real estate contract here is not resorted to for the purpose of varying or contradicting the terms of an integrated construction contract; it is not a collateral writing that is being considered as a means of varying the terms of the construction contract." The trial court merely used the sale contract to determine the parties' circumstances when executing the two contracts on the same day. "The parol evidence rule does not prevent the introduction of evidence to show the facts and circumstances existing at the time of execution . . . ." *Foley* v. *Huntington Co.*, supra, 42 Conn. App. 734, citing *Security Equities* v. *Giamba*, 210 Conn. 71, 77–78, 553 A.2d 1135 (1989). The trial court's opinion does not disclose any instance where it attempted to use the sale contract to vary or contradict the terms of the construction contract. The trial court, therefore, correctly utilized the sale contract without violating the parol evidence rule.

IV

We now turn to the issue of whether the trial court properly invoked its injunctive powers in preventing

the defendants from forcing the plaintiffs into arbitration. The defendants claim that the trial court abused its injunctive powers (1) by issuing an improper advisory opinion and (2) by basing its determination on the unsubstantiated fears of the plaintiffs while incorrectly finding that the plaintiffs would have suffered irreparable harm.

## A

The defendants argue that the trial court issued an improper advisory opinion. We fully agree with the defendants' contention that the courts are without the jurisdiction to issue advisory opinions. Our Supreme Court has strongly stated and it is well settled that "[i]t is not our function to render opinions which are simply advisory. *Reply of the Judges*, 33 Conn. 586 (1867)." *Pellegrino* v. *O'Neill*, 193 Conn. 670, 683, 480 A.2d 476, cert. denied, 469 U.S. 875, 105 S. Ct. 236, 83 L. Ed. 2d 176 (1984).

The trial court's decision was not an advisory opinion. The trial court had before it a controversy between two parties seeking adjudication. Its decision was binding on both parties. The defendants' argument that the trial court "rendered 'general advice' to the arbitrators" is without merit. The trial court determined whether the plaintiffs had contracted to arbitrate their disagreements, which, as we have held, was within its province. The actions of the trial court did not infringe on the jurisdiction of the arbitration panel and, furthermore, did not constitute an advisory opinion.

## B

The defendants also argue that the trial court abused its authority by granting the plaintiffs' request for injunctive relief based on the "unsubstantiated fears" of the plaintiffs.

"The questions of irreparable harm and availability of an adequate remedy at law are threshold issues which the court must consider before it can determine whether injunctive relief is warranted . . . ." *Hartford* v. *American Arbitration Assn.*, 174 Conn. 472, 476, 391 A.2d 137 (1978). "A party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law. . . . These elements are so crucial that a party's failure to allege and prove them is sufficient ground for sustaining the refusal to grant an injunction, even where a court's conclusions on the merits are erroneous." (Citations omitted.) Id., 476–77.

The defendants rely on *Housing Authority* v. *Peraro*, 40 Conn. Sup. 365, 380, 509 A.2d 569 (1985), aff'd, 199 Conn. 566, 509 A.2d 474 (1986), for the proposition that the court cannot grant an injunction based only on the fears of the applicant. We agree. That does not, however, reflect what happened in this case. The plaintiffs were facing a situation in which they would have to arbitrate claims that they did not agree to arbitrate if they did not obtain judicial intervention. The defendants had actually begun arbitration proceedings with the American Arbitration Association.

If the plaintiffs had been forced to proceed with arbitration they would have suffered irreparable harm. We agree with the trial court's statement in *Sentra Securities Corp.* v. *Jackson*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 5719771 (January 16, 1998) (21 Conn. L. Rptr. 276), that "irreparable harm results where parties are forced to expend time, energy and money to defend themselves in a forum in which they never clearly and unmistakenly agreed to arbitrate." Id., 277. The plaintiffs would have been forced to spend time and money defending claims that they did not agree to arbitrate. This would have resulted

in irreparable harm to the plaintiffs, and the trial court correctly issued the injunction.

Having established that the plaintiffs would have suffered irreparable harm without the trial court's intervention, we next address the issue of whether the plaintiffs were without an adequate legal remedy. The defendants assert that the statutory, postarbitration remedies sufficiently protect the plaintiffs' interests. The plaintiffs assert that the postarbitration remedies are inadequate. Postarbitration remedies are created by General Statutes §§ 52-417 through 52-420.[8] We agree that the legisla-

[8] General Statutes § 52-417 provides: "Application for order confirming award. At any time within one year after an award has been rendered and the parties to the arbitration notified thereof, any party to the arbitration may make application to the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, to any judge thereof, for an order confirming the award. The court or judge shall grant such an order confirming the award unless the award is vacated, modified or corrected as prescribed in sections 52-418 and 52-419."

General Statutes § 52-418 provides: "Vacating award. (a) Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

"(b) If an award is vacated and the time within which the award is required to be rendered has not expired, the court or judge may direct a rehearing by the arbitrators.

"(c) Any party filing an application pursuant to subsection (a) of this section concerning an arbitration award issued by the State Board of Mediation and Arbitration shall notify said board and the Attorney General, in writing, of such filing within five days of the date of filing."

General Statutes § 52-419 provides: "Modification or correction of award. (a) Upon the application of any party to an arbitration, the superior court

ture has taken steps to ensure that the decisions of arbitration panels do not go without the possibility of judicial review. The statutory remedies, however, do not address the issue of whether the parties to arbitration agreed to arbitrate in the first place. Thus, to leave the plaintiffs only to the statutory, postarbitration remedies would leave them lacking an adequate legal remedy. "A remedy at law, to exclude equity jurisdiction, must be as complete and beneficial as the relief in equity." *Beach* v. *Beach Hotel Corp.*, 117 Conn. 445, 453, 168 A. 785 (1933). We hold, therefore, that an injunction was the proper method to protect the plaintiffs from irreparable harm.

The judgment is affirmed.

In this opinion the other judges concurred.

---

for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated, or, when the court is not in session, any judge thereof, shall make an order modifying or correcting the award if it finds any of the following defects: (1) If there has been an evident material miscalculation of figures or an evident material mistake in the description of any person, thing or property referred to in the award; (2) if the arbitrators have awarded upon a matter not submitted to them unless it is a matter not affecting the merits of the decision upon the matters submitted; or (3) if the award is imperfect in matter of form not affecting the merits of the controversy.

"(b) The order shall modify and correct the award, so as to effect the intent thereof and promote justice between the parties."

General Statutes § 52-420 provides: "Motion to confirm, vacate or modify award. (a) Any application under section 52-417, 52-418 or 52-419 shall be heard in the manner provided by law for hearing written motions at a short calendar session, or otherwise as the court or judge may direct, in order to dispose of the case with the least possible delay.

"(b) No motion to vacate, modify or correct an award may be made after thirty days from the notice of the award to the party to the arbitration who makes the motion.

"(c) For the purpose of a motion to vacate, modify or correct an award, such an order staying any proceedings of the adverse party to enforce the award shall be made as may be deemed necessary. Upon the granting of an order confirming, modifying or correcting an award, a judgment or decree shall be entered in conformity therewith by the court or judge granting the order."