[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO STAY PROCEEDINGS AND MOTION TO COMPEL ARBITRATION
The plaintiffs have brought this action for breach of contract against the defendants. The defendants have moved to stay the proceedings and to compel the plaintiffs to arbitrate the claims. The question for the court is whether any of these parties has agreed to arbitrate any of these claims. The answer depends on what law applies, who the parties are, and to what written documents each party is legally bound.
THE NATURE OF THE DISPUTE
CT Page 10988
The plaintiff Premier Roofing Company, Inc., is a Connecticut corporation with a principal place of business in West Haven, Connecticut. It uses "Premier Industries" as a trade name.[1]
Premier-New York, Inc. is a wholly owned subsidiary of Premier Roofing Company, Inc. These plaintiffs contracted with the defendant Home Insurance Company, Inc., and also formerly with Home Indemnity Company (now merged with Home Insurance Company, Inc.) to provide insurance for worker's compensation, employer liability and general liability.[2]
The premiums that the plaintiffs pay for the various coverages is the subject of a fairly complicated formula. Some of the formula is contained in the endorsements to the policies. The remainder is set forth in written multi-page Premium Agreements, with attached schedules, that are subject to revision from time to time and are signed and exchanged by Premier and Home. While there is a basic or up-front premium that is charged, the remainder of the premium is retrospectively rated, that is, calculated and paid in arrears based on loss payouts made by the insurer under the policies, reserves for existing or future claims, and handling charges, fees and taxes. The Premium Agreements provide for a minimum and a maximum retrospective premium that is established in relation to the standard premium. Also there is a cap on the retrospective premium based on a loss limitation for each kind of coverage, a limit which has increased from $100,000 in some of the earlier Premium Agreements to $250,000 in the more recent ones.
The policies and endorsements have no arbitration clause, but each of the Premium Agreements has an arbitration clause which provides:
 If any dispute shall arise between Company and the Insured with reference to the interpretation of this agreement, or their rights with respect to any transaction involved, whether such dispute arises before or after termination of this Agreement, such dispute, upon the request of either party, will be submitted to three arbitrators. . . . The decision in writing of any two arbitrators . . . shall be final and binding on both parties.
Significantly each of the Premium Agreements has a signature line for a representative of the insurance company and the CT Page 10989 insured to indicate their assent to the terms of the agreement.
The plaintiffs' complaint alleges that through a wrongful and oppressive interpretation of the formula as it applies to the maximum premium and the cap, the defendants have breached their contract with the plaintiffs (Count I) and are liable for breach of covenant of good faith and fair dealing (Count II), violation of Connecticut Unfair Trade Practices Act (Count IV), violation of the Massachusetts Consumer Protection Law (Count V), and intentional interference with contract rights (CountVI).[3] The defendants have responded by moving for a stay of the proceedings and simultaneously demanding arbitration.
THE PARTIES
The plaintiffs claim that they are not parties to the Premium Agreements, only to the actual contracts of insurance and endorsements which contain no arbitration clauses. The plaintiffs rely on phrases throughout the Premium Agreements that describe the "insured" as Premier Industries or Premier Industries, Inc., an entity that they claim is not their name or alter ego and which in fact has no legal existence. The court finds this argument — that the Premium Agreements are somehow not binding because they name the wrong party — to be entirely disingenuous.
First, some of the Premium Agreements do properly name the plaintiff Premier Roofing Company, Inc.[4]
Secondly, there was never any question through the many years of their business relationship about who the parties were. The parties to the Premium Agreements were the same as those to the insurance policies. If the plaintiffs believed they were not parties to the Premium Agreements, it strains credulity to expect that they would continue to pay hefty premiums for nearly a decade and that Home would continue to write insurance for them every year. The plaintiffs cannot allow themselves to execute documents under which they clearly considered themselves bound and then later allege that a scrivener's error in the precise wording of their name relieves them of their contractual obligations under the agreement.
It appears that the plaintiffs used their "legal" name and their trade name interchangeably. For example, in paragraph 37 of the complaint, the plaintiff acknowledges and alleges that the Premium Agreement covering the period May 1, 1992, until May 1, CT Page 10990 1993 was between "Premium Industries and Home." But it is an agreement on which the plaintiffs rely as a source for the claim that the terms of the agreement were misapplied by Home to charge the plaintiffs a higher amount for loss claims than was bargained for. In addition (and contrary to the argument that there is no legal entity known as "Premier Industries" that could contract with the defendants), each of the Premium Agreements that is signed on behalf of "Premier Industries" is signed by an individual officer of the insured. Michael Feinberg, who signed as secretary on the Premium Agreements dated 1988, 1990, 1993, 1995 (and another individual whose signature is illegible who signed the 1993 agreements as President) cannot now claim that they were not signing on behalf of the corporation in which they actually held that office and which thereafter actually performed the obligations and received the benefits of the contract.
As to the attempt by the plaintiffs to draw a distinction between Premier Roofing Company, Inc. and Premier-New York, Inc., its wholly owned subsidiary, and to claim that none of the Premium Agreements was ever signed by any authorized representative of Premier-New York, Inc., this argument creates an anomalous situation. Aside from naming Premier-New York, Inc. as a plaintiff in the complaint, and alleging its corporate and subsidiary status, Premier-New York, Inc. is never again mentioned in the complaint. All of the allegations in the complaint relate only to what the defendants did to Premier Roofing. If that is so and if Premier-New York, Inc. is understood not to be subsumed by both the obligations and benefits of its parent as it relates to the actions of the defendants, then the complaint is subject to immediate dismissal of Premier-New York, Inc. as a plaintiff since it states no cause of action. If however the complaint is understood as alleging that Premier-New York, Inc. is bound in all respects as a subsidiary by the actions of its parent and agent Premier Roofing Company, Inc., at least as it relates to the insurance policies and Premium Agreements, then the complaint states a claim on Premier New York's behalf in the same way as that of Premier Roofing Company, Inc., and subject to that which binds the latter.
The plaintiffs are claiming that they are aggrieved because Home is miscalculating the premiums, and, as the court finds below, the calculation is based largely on the language in the Premium Agreements. If the court were to accept the argument that the plaintiffs are not parties to the Premium Agreements then the CT Page 10991 claim of the plaintiffs should be stricken because they have no obligation to pay at all. The obligation of the plaintiffs would be rendered illusory.
The fact is the plaintiffs and Home are parties to the policies and endorsements as well as to the Premium Agreements, all of which must read as a whole in order to understand the obligations of each party. These documents are to be interpreted together as the agreement of the parties. E F Construction Co.v. Rissil Construction Associates. Inc., 181 Conn. 317, 319-20
(1980). The fact that the arbitration clause is contained in one signed instrument and not another does not alter the fact that the language in the Agreement expresses the intention of these parties to submit this kind of dispute to arbitration. Id.
The court finds that the plaintiffs, Premier Roofing Company, Inc., and PremierNew York, Inc. as its subsidiary, are parties to and obligees under the Premium Agreements.
THE AGREEMENT TO ARBITRATE
Here the argument of the plaintiffs is that they contracted for policies of insurance and that the Premium Agreements are not part of the insurance agreement, but only a wholly separate billing arrangement, almost like an invoice. But when one focuses on the actual incidents that have given rise to the lawsuit, it is clear that the plaintiffs are claiming that they are being overcharged for their insurance coverage.
The plaintiffs allege four specific examples of how the defendants have miscalculated the amounts due from the plaintiffs. In the first instance regarding an injury claim from James Farrell, a Premier Roofing employee, the plaintiffs allege in paragraph 70 that "Home and REM have charged Premier Roofing two loss limits of $250,000 . . . [and] a separate loss limit of $250,000. . . ." In paragraph 72, on the Farrell injury, it is alleged that "Home and REM have taken the position that upon settlement of the Farrell action, Premier Roofing must pay $750,000," an amount that the plaintiffs believe to be at least $500,000 too much. In the instance of the injury claim of another employee, Joseph Ferry, the plaintiffs allege in paragraph 77 that the defendants manipulated the loss allocation to avoid paying benefits to the policyholder "and to increase the premiums paid by Premier Roofing." Likewise in the injury claim of employee Andrew Cawley, the plaintiffs allege in paragraph 81 CT Page 10992 that through the alleged "allocation scheme, Home has charged Premier Roofing retrospective premiums in excess of the single loss limit of $250,000," which is what the plaintiffs claim is the cap on their premium. The plaintiffs allege a similar instance related to an injury claim of employee John Myers.
From a complete review of the complaint, the Premium Agreements (submitted as attachments to the Defendants' Memorandum dated March 4, 1999) and a sample Workers Compensation and Employers Liability Insurance Policy, with Endorsements, (submitted as an attachment to the Plaintiffs' Memorandum dated March 25, 1999), it is clear that the entire dispute revolves around what amounts of money the plaintiffs must pay to Home for the coverage Home provides. This calculation cannot be made without reference to the language in the Premium Agreements in effect for a particular policy/year of coverage, and their attached schedules. Each of these Agreements contains the arbitration clause quoted above, obligating the parties to arbitrate any such dispute.
The plaintiffs argue that the arbitration clause is unconscionable and violates public policy. They point to a provision in the arbitration clause requiring that the arbitrators be "executive officers or former executive officers of insurance or reinsurance companies not under the control of either party to this agreement." The plaintiffs assert that the enforcement of this provision will necessarily result in a panel biased in favor of the defendants and urge that the plaintiffs should not be compelled to arbitrate before such a panel. This is a bit like saying that a judge, now under oath to be fair and impartial, who was formerly a criminal defense lawyer ought not be allowed to preside on criminal trials because she will be prejudiced against the state, or a former prosecutor against the accused.
Statutes governing arbitration provide that a party may petition to set aside an arbitration award if it was the product of an arbitrator's misconduct or partiality. See, e.g., Conn. Gen. Stat. § 52-418(a). The fact that the panel is to be composed with those who have an insider's knowledge of the insurance industry says nothing about partiality.
The claim of the plaintiffs that, as consumers, they should not have to arbitrate their unfair trade practice claims is unpersuasive. See, Fink v. Golenbock, 238 Conn. 183, 197, n. 10 CT Page 10993 (1996). The claim that arbitration should be avoided because of the alleged failure of the defendants to obtain the Insurance Commissioner's approval of the Premium Agreements is likewise without merit.
THE LAW
The plaintiffs argue that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2 et seq., governs this dispute over arbitrability. Memorandum of Plaintiffs dated March 25, 1999, p. 8. The defendants agree. Memorandum of Defendants dated April 12, 1999, p. 3. The question of arbitrability is initially one for the court to resolve. First Options of Chicago v. Kaplan,514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). The FAA and Connecticut law are in accord on this. See, e.g. Scinto v. Sosin,51 Conn. App. 222, 228, app. denied, 247 Conn. 963 (1999). Having found that the plaintiffs and Home are parties who agreed in writing to submit disputes regarding premium calculations to arbitration, the court determines that the claims raised in the plaintiffs complaint are arbitrable, with one exception noted below.
THE PROBLEM OF REM
 REM did not agree to arbitrate with the plantiffs, nor they with REM. According to the complaint, REM acts as the agent of the defendants to service Home's insurance contracts. Plaintiffs' Complaint, para. 8-9. Should the arbitrators determine the issues in favor of the plaintiffs and against Home, Home would be bound to direct REM to perform the servicing functions in accordance with the award. A stay of the action as to REM until the arbitration is complete would create no disadvantage for the plaintiffs, and the stay is one to which Home and REM consent.
CONCLUSION
For all of the above reasons, this court enters an order compelling the plaintiffs to arbitrate their dispute with the defendants Home Insurance Company, Inc., and Home Indemnity Company, and orders a stay of the action as to all defendants pending an outcome of that arbitration. The Motion of the Plaintiffs for a Preliminary Injunction barring such arbitration is denied.
Patty Jenkins Pittman, Judge CT Page 10994