[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON REQUEST FOR TEMPORARY INJUNCTION
PROCEDURAL BACKGROUND
This matter was instituted by an order to show cause why a temporary injunction should not issue directing the defendants Connecticut Resource Recovery Authority and American Arbitration Association to terminate an arbitration proceeding against the plaintiff, Allied Waste Industries, Inc.
FACTS
The Connecticut Resource Recovery Authority (CRRA) and Capital Recycling of Connecticut, Inc. (CROC) built and operated a regional recycling center in Hartford, Connecticut.
In 1998, CROC desired to assign its rights and obligations to operate the center to a third party, American Disposal Services of Missouri, Inc. (American).
On November 30, 1998 the defendant CRRA gave its written consent to the assignment of the agreement to American.
Concurrent with the execution of the assignment, a guarantee was signed by the plaintiff herein, Allied Waste Industries, Inc. (Allied). Under the terms of that guarantee Allied agreed to guarantee performance by American of its duties under the contract.
Although there was some disagreement at the time of oral argument to the exact terms of the guarantee, it was agreed that for purposes of this application to enjoin arbitration, a certain guarantee dated November 30, 1998 and attached to the defendants' brief as Exhibit G was the guarantee that controlled this matter. CT Page 8503
DISCUSSION
Both sides agree that the leading Connecticut case on the question of obligations of guarantors to arbitrate is Sciento v. Sosin,51 Conn. App. 222 (1998).
Sciento makes several things clear. At argument the attorneys agreed with the court in its reading of the holding of Sciento. It is clear that simply because Allied guaranteed the obligation they have not necessarily bound themselves to arbitration. Allied must either have affirmatively agreed in the guarantee agreement to be bound by the arbitration provisions of the original contract or agree in the guaranty agreement to arbitrate disputes under the original contract.
The court notes that Allied's guarantee was not in the form of a simple endorsement on the agreement between CRRA and American. Rather, it is found in a five page guaranty agreement containing fourteen separately numbered paragraphs.
The sense of the guaranty agreement can be gained from paragraphs 1 and 2 of that agreement. The agreement provides that the guarantor [Allied] hereby agrees as follows:
 "(1) This guaranty relates to (a) the full prompt and absolute performance and observation by American of all of the obligations contained in the agreement to be performed or observed by, or imposed upon, American during the terms of the agreement and (b) any loss, liability, expense or claim, including attorney's fees, arising from any event of default under the agreement and any breach by American of any of its obligations contained in the agreement (all of which matters are collectively hereinafter referred to as the "liabilities").
 (2) For value received and in consideration for and as an inducement to CRRA consenting to the assignment of the agreement to American, guarantor hereby absolutely, unconditionally and irrevocably guarantees to CRRA the full, prompt and absolute payment, performance and observation of all liabilities. Guarantor acknowledges that it will derive a substantial and material economic benefit from CRRA's consent to the assignment of the agreement to American."
CT Page 8504 There can be little question that part of CRRA's concern with the assignment was related to the financial condition of American and CRRA wished a guarantor of American's financial obligations. However, the court concludes that the guaranty agreement executed by the parties goes well beyond a guaranty of financial obligations only. The agreement appears to have been specifically drafted for the purpose of binding Allied Waste Industries to all of the obligations which American Disposal Services of Missouri, Inc. was assuming as a result of the assignment.
Accordingly, the court finds that Allied Waste Industries, Inc. is bound to arbitrate the matters in dispute.
In addition, it is clear that American Disposal Services is a wholly owned subsidiary of Allied Waste Industries, Inc. Each entity is represented by the same law firm. There is little or no evidence of any harm that would result to Allied Waste Industries, Inc. as a result of participating in the arbitration. If the arbitrator were to enter an order against Allied not justified by the agreement of the parties that order could be reviewed post-arbitration. The court finds no basis to conclude that Allied would suffer irreparable harm from the court's failure to enjoin arbitration at this time.
The court concludes that Allied has agreed to arbitrate the matters in dispute. Moreover, even in the absence of an agreement to arbitrate, the factual pattern presented would not justify a finding of irreparable harm sufficient to enjoin the proposed arbitration.
The injunction is denied.
Kevin E. Booth, J.