[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO DISMISS OR FOR STAY OF PROCEEDINGS AND TO COMPEL ARBITRATION #103
On July 27, 1999, the plaintiff, A-Z Auto Sound Systems, Inc. (A-Z), filed a nine count complaint against the defendants, Infinity Systems, Inc. (Infinity) and House of Representatives, Inc. (HRI), seeking relief based on claims arising out of a written contract between the plaintiff and Infinity. On or about April 1, 1996, A-Z and Infinity entered into a written Distribution Agreement pursuant to which A-Z was granted the right to distribute, service and repair Infinity products. On or about April 1, 1998, the parties renewed the Distribution Agreement. In or around March 1999, Infinity constructively terminated A-Z's distributorship, without advance notice or a writing, in violation of the 1998 Agreement.
The plaintiff alleges: breach of contract as to Infinity (count one); breach of the covenant of good faith and fair dealing as to Infinity (count two); tortious interference with business expectancies as to Infinity and HRI (count three); tortious interference with contract as to Infinity and HRI (count four); conversion as to Infinity and HRI (count five); violation of the Connecticut Uniform Trade Secrets Act, General Statutes §35-50 et seq., as to Infinity and HRI (count six); violation of the Connecticut Unfair Trade Practices Act, General Statutes § CT Page 16168 42-110 et seq., as to Infinity and HRI (count seven); civil conspiracy as to Infinity and HRI (count eight); and violation of the Connecticut Franchise Act, General Statutes § 42-133e et seq., as to Infinity (count nine)
On September 2, 1999, the defendant, Infinity, filed a motion to dismiss or for stay of proceedings and to compel arbitration on the ground that under the terms of the agreement "the plaintiff expressly agreed that all disputes between the parties would be resolved pursuant to arbitration." Moreover, on September 2, 1999, Infinity filed a request for arbitration in accordance with the arbitration provisions seeking approximately $40,000 plus interest from the plaintiff that is allegedly due under the terms of the agreement. Furthermore, Infinity asserts that it is ready and willing to arbitrate any other disputes between the parties as per said agreement. Hence Infinity "moves this court pursuant to Conn. Gen. Stat. §§ 52-408, 52-409 and52-410 to dismiss this action by reason of lack of subject matter jurisdiction or failing such a finding, then to stay all proceedings in this lawsuit and to compel the plaintiff to submit its claims to arbitration as provided for in said agreement."[1]
The plaintiff alleges in opposition to Infinity's motion to dismiss or for stay of proceedings and to compel arbitration that: "1) the trial court has jurisdiction because the parties did not manifest an intent to have the threshold issue of arbitrability determined by an arbitrator; 2) there is a genuine issue as to whether the 1998 Agreement should control this dispute; 3) the dispute between A-Z and the Defendants is beyond the scope of the arbitration clause; and 4) the conduct of both Defendants is so inextricably linked that it would be more appropriate to have the entire dispute determined on the merits in one judicial forum." On November 4, 1999, the plaintiff filed a motion to stay arbitration on grounds two, three and four listed above.
"A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Emphasis in original; internal quotation marks omitted.) Gurliacci v. Mayer, 218 Conn. 531, 544,590 A.2d 914 (1991). "The motion to dismiss shall be used to assert (1) lack of jurisdiction over the subject matter . . . ." Practice Book § 10-31; Sadloski v. Manchester, 235 Conn. 637, 645-46 n. 13,668 A.2d 1314 (1995). CT Page 16169
"Jurisdiction of the subject-matter is the power [of the court] to hear and determine cases of the general class to which the proceedings in question belong." (Internal quotation marks omitted.) Doe v. Roe, 246 Conn. 652, 661, 717 A.2d 706 (1998). "[A] claim that [the] court lacks subject matter jurisdiction [may be raised] at any time." (Internal quotation marks omitted.)Dowling v. Slotnik, 244 Conn. 781, 787, 712 A.2d 396 (1998). "[O]nce the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented . . . and the court must fully resolve it before proceeding further with the case." Figueroa v. C. S. BallBearing, 237 Conn. 1, 4, 675 A.2d 845 (1996). "In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." Pamela B. v.Ment, 244 Conn. 296, 308, 709 A.2d 1089 (1998)
The first issue before the court is which forum shall decide the arbitrability of this dispute, an arbitrator or a court. It is well established in Connecticut that "[w]hether a particular dispute is arbitrable is a question for the court, unless, by appropriate language, the parties have agreed to arbitrate that question, also." (Internal quotation marks omitted.) Welch Group,Inc. v. Creative Drywall, Inc., 215 Conn. 464, 467, 576 A.2d 153
(1990); Scinto v. Sosin, 51 Conn. App. 222, 227, 721 A.2d 552
(1998), cert. denied, 247 Conn. 963, __ A.2d __ (1999) "Whether the parties intended to submit the issue of arbitrability, as well as the merits of a claim, to an arbitrator clearly depends on the parties' intent." Scinto v. Sosin, supra, 227-28. "Unless the agreement shows such intent, the determination of the question of arbitrability remains a function of the court. . . ." (Citation omitted.) Scinto v. Sosin, supra, 228.
In Scinto, the contract contained a very broad arbitration clause covering " [a]ny controversy or Claim arising out of or related to the Contract. . . ." Scinto v. Sosin, supra,51 Conn. App. 228. The court held that "the broad arbitration clause does not, by itself, deny the trial court jurisdiction to decide the matter of arbitrability, because the parties did not manifest an intention to arbitrate the issue of arbitrability." Scinto v.Sosin, supra, 230.
Similarly, in the present case, the contract contains a very CT Page 16170 broad arbitration clause covering " [a]ny controversy or claim arising out of or related to this Agreement. . . ." The operative arbitration language of these two agreements is essentially identical. Hence, this court concludes, as did the Scinto court, that the arbitration clause does not express an intent that issues of arbitrability should be decided by an arbitrator. Accordingly, it is held that, under the arbitration clause, the court, and not an arbitrator, will decide the question of arbitrability.
The second issue before the court is whether the parties agreed to submit the merits of this dispute to arbitration. "The courts are empowered to direct compliance with the provisions of arbitration agreements, but no one may be compelled to arbitrate a dispute outside the scope of the agreement, which constitutes the charter of the entire arbitration proceedings and defines and limits the issues to be decided by the arbitrators. . (Citations omitted.) Fink v. Golenbock, 238 Conn. 183, 195, 680 A.2d 1243
(1996). It is well settled in Connecticut that the "positive assurance" test articulated in United Steel Workers of America v.Warrior Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347,4 L.Ed.2d 1409 (1960) is used to determine whether the parties agreed to submit the merits of this dispute to arbitration. SeePolicemen's Firemen's Retirement Board v. Sullivan, 173 Conn. 1,7, 376 A.2d 399 (1977); Board of Police Commissioners v. Maher,171 Conn. 613, 621, 370 A.2d 1076 (1976). Under the positive assurance test, "judicial inquiry . . . must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance. . . . An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." (Emphasis added.) United Steel Workers of America v. Warrior Gulf Navigation Co., supra, 363 U.S. 582-83.
In this case, the parties to the contract agreed that "[a]nycontroversy or claim arising out of or related to this Agreement, or the breach or validity thereof, whether at common law or under statute, including without limitation claims asserting violation of the antitrust laws, shall be settled by final and binding arbitration in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA"). . . ." (Emphasis added.) The Connecticut Supreme Court has described similar language as all embracing, all encompassing and broad. See GaryCT Page 16171Excavating, Inc. v. North Haven, 164 Conn. 119, 123,318 A.2d 84 (1972) (words "any disagreement" are broad and all embracing);Connecticut Union of Telephone Workers, Inc. v. Southern NewEngland Telephone Co., 148 Conn. 192, 197, 169 A.2d 646 (1961) (words "all claims" described as all encompassing) Thus, a careful reading of the arbitration clause does not permit the court to determine with positive assurance that these claims were intended by the parties to the contract to be excluded from the scope of their agreement to arbitrate.
A-Z also avers that the dispute between itself and Infinity is beyond the scope of the arbitration clause. The predicate for A-Z's claims, however, is a dispute arising from the rights and obligations created by the Distribution Agreement between A-Z and Infinity because it is this agreement that establishes the employment relationship from which the underlying conduct that forms the basis of the dispute stems. Moreover, A-Z's claim that the conduct of both defendants is so inextricably linked that it would be more appropriate to have the entire dispute determined on the merits in one judicial forum is not a basis for barring arbitration. The plaintiff cites no authority for this argument and research by this court has found no authority to support this proposition.
Lastly, A-Z's allegation that there is a genuine issue whether the 1998 Agreement should control this dispute is unpersuasive. Paragraph four of the complaint states: "On or about April 1, 1996, A-Z and Infinity entered into a Distribution Agreement (`Agreement'), pursuant to which A-Z was granted a "Full Service Distributorship' by Infinity for the distribution of Infinity products and the performance of service and repairs upon said Infinity products." Paragraph five of the complaint states: "Upon information and belief, on or about April 1, 1998, A-Z and Infinity renewed the aforesaid Distribution Agreement in writing (`1998 Agreement')." In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint. See Pamela B. v. Ment, supra,244 Conn. 308. Construing these allegations in a manner most favorable to the pleader, the court still finds that the 1998 Agreement controls this dispute as to A-Z and Infinity. In the 1998 Agreement the parties agreed that "[a]ny controversy or claim arising out of or related to this Agreement, or the breach or validity thereof . . . shall be settled by final and binding arbitration. . . ." (Emphasis added.) It is therefore held that the claims between A-Z and Infinity are arbitrable and must be CT Page 16172 heard and decided in an arbitration proceeding. Thus, Infinity's motion for stay of proceedings and to compel arbitration is granted as to the contractual parties.
If, after the arbitration proceeding, the claims against HRI have not been disposed of, that action may proceed.
Hale, J.